The State ex rel. Durner vs. Huegin.

---

---

THE STATE EX REL. DURNER, Sheriff, Plaintiff in error, vs. HUEGIN, Defendant in error.

SAME, Plaintiff in error, vs. AIKENS, Defendant in error.

SAME, Plaintiff in error, vs. HOYT, Defendant in error.

*November 21, 1900 — April 30, 1901.*

*Appeal and error: Habeas corpus: Parties: Right to be heard by counsel: Nature of action: Criminal law and practice: Sufficiency of complaint and commitment: Pleading: Statutory form: Preliminary examination: Review on* habeas corpus: *Jurisdiction: Conspiracy: Combination to control prices: Malice: Construction of statutes.*

1. Upon the review in this court of a case upon appeal or writ of error, a proper party to such appeal or writ is entitled to be heard by counsel regardless of whether that will, for the time being, recognize him as having a status which is one of the very matters to be decided on such review.

2. If, in a *habeas corpus* suit against a sheriff, he is required to restore his prisoner to liberty, he is a party aggrieved within the rule that only such a party is entitled to be heard on appeal or review on writ of error.

3. The statutory and judicial policy which precludes a private attorney from appearing for the state in a criminal case in a trial or appel-

The State ex rel. Durner vs. Huegin.

late court except by a special appointment for that purpose, does not apply to *habeas corpus* proceedings.

4. While an attorney cannot appear on the side of the state in a *habeas corpus* suit at public expense, he may appear by request of the proper officer at private expense, to represent the interests of the state, and he may appear regardless of such consent to represent the person charged with the wrong.

5. Regardless of what a *habeas corpus* proceeding should be called under the Code, which divides all judicial proceedings into actions and special proceedings, it is to all intents and purposes a civil suit — a proceeding in the nature of a civil action — in which the party seeking to establish his right to personal liberty is plaintiff within the meaning of sec. 2601, Stats. 1898, regardless of the name by which such a party is commonly known, and the person charged with the wrong is an adverse party, to all intents and purposes a defendant, regardless of the name by which such a person is commonly known in such a proceeding.

6. An order or judgment in a *habeas corpus* suit is *res adjudicata* as to the person charged with unlawfully restraining another of his liberty, till reversed in some proper proceeding.

7. A necessary party to a judicial proceeding as a representative of public authority, having no interest in the litigation except to vindicate such authority, is a party in interest and may be a party aggrieved within the meaning of the appeal statute and the practice on review on writs of error.

8. A warrant of commitment for trial which states the offense charged with convenient certainty is sufficient if good in all other respects.

9. The formal language, "against the peace and dignity of the state of Wisconsin and the statutes in such case made and provided," or equivalent formal words, is unnecessary to either a criminal complaint or warrant of commitment for trial.

10. The rule of convenient certainty as to describing the offense in a warrant of commitment does not require the facts to be stated in detail. A statement thereof according to their legal effect is sufficient.

11. The description of an offense in a warrant of commitment by its generic name, if it has one, whether the offense be statutory or one known to the common law, states by reasonable inference all the facts requisite to such offense.

12. The statutory form for a commitment found in sec. 4774, Stats. 1898, is satisfied by the use of language including all material elements, though such language departs from the particular wording of the form.

The State ex rel. Durner vs. Huegin.

13. The rule that a form prescribed by statute must be strictly followed, does not mean literally followed unless the statute clearly so indicates. That is not the case with sec. 4774, Stats. 1898.

14. Upon proceedings before a committing magistrate being properly brought to the attention of the court for review in *habeas corpus* proceedings, the court has jurisdiction to examine into the sufficiency of the complaint to charge a criminal offense, and of the evidence as regards whether it will admit of a reasonable inference of the existence of the ultimate facts necessary to hold the person charged for trial, i. e., that the offense was committed and that there is probable cause for believing the accused to be guilty thereof.

15. A *habeas corpus* suit reaches only jurisdictional error. It does not reach beyond the commitment to the proceedings leading up thereto where the person in custody is detained by virtue of the final judgment or order of a court having jurisdiction of the subject matter and the person. But such is not the case where the person in custody is being held on a commitment for trial.

16. A preliminary examination is not an action. The determination thereof is not a final judgment. The proceeding is not according to the course of the common law; it is purely statutory, and compliance with the statute is requisite to jurisdiction at every step.

17. An examination to determine whether a criminal prosecution shall be commenced is a judicial proceeding in that, so far as the magistrate acts within his jurisdiction, his decision is as binding for the purposes of such proceeding when it is right as when it is wrong. But, like the situation where a board is authorized by statute to act in a *quasi*-judicial capacity upon evidence, if there is no evidence reasonably permitting of action, a decision upon a contrary theory is in excess of jurisdiction.

18. Where an examining magistrate acts upon evidence, and such evidence, looking at it from the most favorable standpoint, will not reasonably permit of such action. the error is jurisdictional, strictly so called, remediable by writ of *habeas corpus*, within the rule that such errors only can be reached by such writ.

19. The doctrine that, where concert of action is necessary to an offense, a charge of criminal conspiracy does not lie, does not apply where the unlawful agreement is of itself an offense, but applies only where the agreement and the consummation thereof are so closely connected that the two constitute really but one offense, as in the case of the offense of adultery or that of bigamy.

20. Where concert is not a mere part of a criminal act, but is in aid of it and is itself criminal, the charge of conspiracy will lie against

those concerting together to perpetrate such act, though only one of the parties, or neither one alone, could effect such purpose.

21. When a complaint charges the offense of conspiracy in the language of the statute, and a conspiracy to carry out the particular purpose of such conspiracy in a particular way is also charged, accompanied by a statement of overt acts pursuant to the conspiracy, the latter part may be rejected as surplusage in construing the complaint, but the two charges of conspiracy may be read together as charging a conspiracy of the nature indicated by the particular allegations as regards the method adopted for effecting the criminal purpose.

22. A complaint stating that three persons, naming them, concerted together, using substantially the language of the statute, for the purpose of maliciously injuring another in his business, describes the conspiracy made criminal by sec. 4466a, Stats. 1898.

23. An agreement between several independent concerns, each publishing a newspaper and furnishing thereby means for advertising, to compel a fourth person engaged in like business to reduce his rates for advertising or lose customers, indicates a malicious purpose to injure the business of the latter within the meaning of sec. 4466a, Stats. 1898.

24. If sec. 4466a be regarded as describing a conspiracy between owners of independent enterprises to control the rates charged in their line of work in any locality, great or small, it is not constitutional. However, it cannot be so regarded, for it makes the malicious purpose to injure an essential.

25. Several persons, conducting independent business enterprises, may, in the absence of a statute, combine to control prices for the purpose of promoting their individual interests, and in their operations to that end impoverish a rival and drive him out of business, there being no malicious intent in their conduct, using the term in the sense of malice in law. Sec. 4466a does not go that far.

26. All agreements to maliciously injure another in any way are contrary to the policy of the law. Legislative authority is ample to outlaw such agreements to the extent of making the participants therein liable civilly and criminally.

27. A conspiracy to wrongfully injure another is actionable at the common law if executed to the damage of another, whether that other would have a remedy if the act were committed by a single person or not, or whether one person could commit such injury alone.

28. The doctrine that an act which is not actionable if done by one is not when done by many, is not the law of this state. Neither is the doctrine, as applied to a combination of persons to wrongfully

The State ex rel. Durner vs. Huegin.

injure another, that an act, lawful without malice, does not become unlawful by adding such element.

29. A combination of persons to injure another without any just cause, such as an injury that is not an incidental effect of the promotion of the legitimate interests of the members of the combine, is a conspiracy to inflict a a malicious injury upon another at common law, and is such an injury under the statute (sec. 4466a, Stats. 1898) if it relates to such other's reputation, business, trade, or profession.

30. A combination of individuals for the purpose of inflicting a malicious injury upon another, is in effect an agreement to injure by violence. It was the policy of the common law, as it is of the statute, to prevent such a wrong by civil and criminal liabilities.

31. The term "malicious injury," as used in the statute, is synonymous with that term in the law of conspiracy independent of the statute.

32. Sec. 4466a, Stats. 1898, is a mere declaration of the common law. Its only effect is, as to the particular matters stated therein, to remove the necessity for an overt act, which is required by the change in the common law by sec. 4568.

[Syllabus by MARSHALL, J.]

WRITS OF ERROR to review orders of the circuit court for Milwaukee county: R. G. SIEBECKER, Judge. *Reversed.*

Writs of error to the circuit court for Milwaukee county to review orders thereof, in *habeas corpus* proceedings, discharging certain persons from custody who were under restraint, according to forms of law, to await trial for the offense of conspiracy to injure. The complaint charging the offense was under oath and as follows:

"Lucius W. Nieman and Lloyd T. Boyd, of the city of Milwaukee, in said county of Milwaukee, being severally first duly sworn, complain to the police court for the city of Milwaukee, Milwaukee county, Wisconsin, that on or about the 5th day of April, A. D. 1900, at the city of Milwaukee, and within said county of Milwaukee, *Andrew J. Aikens, Albert Huegin,* and *Melvin A. Hoyt* did then and there unlawfully conspire, combine, confederate, associate, agree, mutually undertake and concert together for the purpose and with the intent then and there of wilfully and maliciously injuring The Journal Company, a corporation duly organized and existing under and by virtue of the laws of the state of Wisconsin, in its trade and business, and for the

purpose and with the intent then and there of wilfully and maliciously injuring Lucius W. Nieman, Lloyd T. Boyd, and John W. Schaum, and each of them, in their trade, business, and occupation; that the said The Journal Company at all of said times was, ever since has been, and now is a corporation organized and existing under and by virtue of the laws of the state of Wisconsin, as aforesaid, and at all of said times was and now is the owner and publisher of a daily newspaper and advertising medium known as The Milwaukee Journal, published at the said city of Milwaukee, which said newspaper at all of the times herein referred to had, and now has, a large circulation as a newspaper and advertising medium in the city of Milwaukee, and throughout the state of Wisconsin and elsewhere; that it was at all of said times, and now is, the business and trade of said The Journal Company to publish said newspaper and to sell and furnish the same to its patrons and subscribers, and to solicit, receive, print, and publish in said newspaper for hire advertisements for merchants and other persons, as is customary with such newspapers, and that at all of said times and especially at the time of the said combination and conspiracy, and subsequently thereto, the said The Journal Company had a large number of advertisers or patrons who advertised in said newspaper, The Milwaukee Journal, and that a large portion of the revenue of said The Journal Company was and is derived from such advertisements; that the said Lucius W. Nieman, Lloyd T. Boyd, and John W. Schaum were at all of said times, and now are, stockholders in said The Journal Company, and financially interested in the business and success of said The Journal Company; that the business and trade of the said Lucius W. Nieman is, among other things, that of editor of said The Milwaukee Journal, and the business and trade of said Lloyd T. Boyd is that of business manager of said The Journal Company and of the said The Milwaukee Journal; and that at all of said times the business of said John W. Schaum was and is that of treasurer of said The Journal Company.

"That the prices of advertisements and the advertising rates which newspapers such as said The Milwaukee Journal and the other newspapers herein mentioned are entitled to charge, and which advertisers and patrons are willing to pay, depend and are based largely upon the circulation of such papers and the number of their readers; that early in

the year A. D. 1900, said The Journal Company in good faith established a new rate for advertising in said The Milwaukee Journal, based, among other things, upon its increased circulation, and notified the patrons of and advertisers in the said The Milwaukee Journal thereof, which said rate for advertising was an increase of about twenty-five per cent. above that which was charged by said The Journal Company for like advertising in the year 1899.

"That at all of said times the said *Andrew J. Aikens* was, and now is, the business manager of The Evening Wisconsin, a daily newspaper published in the city of Milwaukee, and having also an extensive circulation and devoted to the purposes of a general newspaper and to advertising for hire, like unto said The Milwaukee Journal; that at all of said times said *Albert Huegin* was, and now is, the business manager of The Milwaukee Sentinel, a daily newspaper published at the city of Milwaukee, having an extensive circulation and devoted to the purposes of a general newspaper and to advertising for hire, like unto the newspapers aforementioned; that at all of said times said *Melvin A. Hoyt* was, and now is, the editor of The Milwaukee Daily News, and the president of the News Publishing Company, the corporation owning said The Milwaukee Daily News, a daily newspaper published at the city of Milwaukee and devoted to the purposes of a general newspaper and to advertising for hire, like unto the other of said newspapers.

"That on or about said 5th day of April, A. D. 1900, the exact date whereof being unknown to affiants, said *Andrew J. Aikens, Albert Huegin,* and *Melvin A. Hoyt,* with others unknown to affiant, in furtherance and in pursuance of said unlawful conspiracy, combination, confederation, association, agreement, and mutual understanding, for the purpose and with the intent then and there of wilfully, maliciously, and unlawfully injuring said The Journal Company in its trade and business, and also said Lucius W. Nieman, Lloyd T. Boyd, and John W. Schaum, and each of them, in their trade and business, and to that end and with the purpose and intent aforesaid, did confederate, agree, and mutually undertake that if any merchant or other person or corporation advertising or proposing to advertise in said The Milwaukee Journal, should pay or agree to pay to said The Journal Company the increased rate for advertising established or fixed by it as aforesaid, that then and in that case any such per-

son or corporation should not be permitted to advertise in any of said other three newspapers, to wit: said The Milwaukee Sentinel, The Evening Wisconsin, and The Milwaukee Daily News, unless such merchant, other person, or corporation should advertise in each of said three papers and pay to each of them or to the respective owners or proprietors of them, a corresponding increase over the rates respectively theretofore charged by such other three newspapers respectively, to wit: about twenty-five per cent. in excess of what said last-mentioned three papers respectively were then charging and had theretofore charged for advertising; but that in case any merchant, other person, or corporation should refuse to pay to said The Journal Company the said increased rate established by it as aforesaid for advertising in said The Milwaukee Journal, then and in that case such merchant or other person or corporation so refusing should be at liberty to advertise in any or all of the other of said three newspapers at the rates which had theretofore been charged by said other three newspapers respectively; that a large number of merchants in the city of Milwaukee and other persons were at the time of said combination and agreement, and subsequently thereto, advertising in all of said newspapers, to wit: The Milwaukee Journal, The Evening Wisconsin, The Milwaukee Sentinel, and The Milwaukee Daily News, and that the right or privilege to advertise in two or more of said papers was and is considered and regarded by a large number of such merchants and other persons as a valuable right and privilege and one much to be desired; that all or the greater part of the patrons of and persons advertising in said The Milwaukee Journal were, pursuant to said combination and conspiracy on the part of said *Aikens, Huegin,* and *Hoyt,* and in furtherance thereof, notified by them of the said agreement, conspiracy, and combination between said *Andrew J Aikens, Albert Huegin,* and *Melvin A. Hoyt;* that many of the patrons and advertisers in said The Milwaukee Journal were induced thereby to withdraw their advertisements therefrom, greatly to the injury of the business and trade of said The Journal Company and of said Lucius W. Nieman, Lloyd T. Boyd, and John W. Schaum; that pursuant to said combination, agreement, confederation, and conspiracy, and in furtherance thereof, said *Andrew J. Aikens, Albert Huegin,* and *Melvin A. Hoyt,* did refuse to allow the advertisements of divers

merchants and other persons to be inserted in either The Milwaukee Sentinel, The Evening Wisconsin, or The Milwaukee Daily News aforesaid, and did prevent the advertisements of divers merchants and other persons from appearing in all or any of said three last-mentioned newspapers because such merchants or other persons so prevented had paid or had agreed to pay to said The Journal Company the said increased rate for advertising established by it as aforesaid; and that by reason of said combination, conspiracy, and agreement many merchants in the city of Milwaukee and elsewhere, and other persons, were prevented from advertising in said The Milwaukee Journal, greatly to the injury of the business and trade of said The Journal Company, and of said Lucius W. Nieman, Lloyd T. Boyd, and John W. Schaum, and of each of them, contrary to the statute in such case made and provided, and against the peace and dignity of the state of Wisconsin.

"Wherefore, affiants pray that the said *Andrew J. Aikens, Albert Huegin,* and *Melvin A. Hoyt* be arrested and dealt with according to law."

The complaint was filed with the police court in the city of Milwaukee and such proceedings were thereupon had, based thereon, that the defendants therein named were arrested and produced before such court for a preliminary examination, whereupon a motion was made for their discharge upon the ground that the allegations of the complaint were not sufficient to show that a criminal offense had been committed. The motion was overruled. Thereupon evidence was taken before the court, tending to establish the allegations of the complaint. At the close of the evidence a motion was made to discharge each of the defendants, which was denied. The court then decided upon the evidence that the offense charged in the complaint had been committed, and that there was probable cause for believing the defendants guilty of such offense. Each defendant refused to give bail for his appearance before the municipal court of Milwaukee county for trial, whereupon he was duly committed to the custody of the sheriff of such county to

await such trial. A commitment was delivered to the sheriff, as to each defendant, all being in the same form. The following is one of such commitments:

"IN THE POLICE COURT OF THE CITY OF MILWAUKEE.

"State of Wisconsin, } ss.
"Milwaukee County. }

" *The State of Wisconsin to the Sheriff, or his Deputy, or to any Constable or Policeman, and to the Keeper of the Common Jail of said County:*

Whereas, *Albert Huegin* has this day been brought before the police court of said city, charged on the oath of Lucius W. Nieman and Lloyd T. Boyd with having on or about the fifth day of April, A. D. 1900, at the city and county of Milwaukee, committed the offense of conspiracy to injure.

" And whereas, an examination of the said *Albert Huegin* has been held before said court, and the said court being satisfied that an offense has been committed as charged in said complaint, and that there is probable cause to believe the prisoner guilty thereof, whereupon the said court did require the said *Albert Huegin* to recognize with sufficient sureties in the sum of five hundred ($500.00) dollars, for his appearance before the municipal court of said county, at the present term thereof, for the year 1900, and not depart said court without leave. And the said *Albert Huegin* having failed to recognize in due form of law.

" Now, therefore, in the name of the state of Wisconsin, you are hereby commanded forthwith to convey and deliver into the custody of the said keeper of the common jail, the body of the said *Albert Huegin*, and you, the said keeper, are commanded to receive the said *Albert Huegin* into your custody, in the said jail, and him there safely keep until he shall recognize as aforesaid or shall otherwise be discharged by due course of law.

" Witness, the Honorable Neele B. Neelen, justice of the police court of said city of Milwaukee, this 30th day of June, in the year of our Lord one thousand nine hundred."

Thereafter each defendant, on a petition stating the proceedings to which reference has been made, sued out of the circuit court for Milwaukee county a writ of *habeas corpus* to test the legality of his detention. The sheriff of the county made due return to each of such writs, justifying

the detention by the commitment placed in his hands as before stated.

*Albert Huegin,* one of the defendants, traversing the return of the sheriff, alleged that the proceedings upon which his detention was based were illegal and void and beyond the jurisdiction of the committing magistrate for the reasons set forth in his petition for the writ. Such reasons were, in substance, that the complaint failed to state facts sufficient to constitute a criminal offense. *Melvin A. Hoyt,* another of the persons in custody, demurred to the return to his writ, for insufficiency. *Andrew J. Aikens* interposed a traverse similar to that of defendant *Huegin.* On the hearing on behalf of defendants *Huegin* and *Aikens,* and in support of their pleas to the return of the sheriff, the evidence and proceedings had in the police court were offered and received in evidence. The commitments were also offered and received in evidence. The district attorney then moved the court that James G. Flanders and William H. Austin, attorneys of the court, be allowed to appear as counsel for the sheriff. The motion was denied upon the ground that *habeas corpus* proceedings are criminal in character, or involve an inquiry into a criminal proceeding, and that the duty devolves solely upon the district attorney to represent the state, the real party, in such a matter, the sheriff not being a party to the proceeding at all.

The court then decided that the proceedings which resulted in the several commitments were illegal, because the facts alleged in the complaint did not constitute a criminal offense; that the statute under which the prosecution was commenced covers only cases where the purpose of the combination is to do such an injury that an action at law can be maintained for damages, against the members of the combination, in case its purpose is carried out. An order was accordingly entered to discharge each of the defendants from custody. Such orders are presented here for review by writs of error, as before stated.

After returns were filed to the writs of error issued out of this court, a motion was made on behalf of the sheriff of Milwaukee county for leave to be heard by private counsel, which motion was opposed by the defendants in error.

For the plaintiff in error there were separate briefs signed by the *Attorney General*, and by *Howard Van Wyck*, district attorney, and *A. C. Umbreit*, assistant district attorney, of counsel, and a brief in reply, signed by *Mr. Umbreit*, assistant district attorney, of counsel, and oral argument by the *Attorney General* and *Mr. Umbreit*.

They contended, *inter alia*, that *habeas corpus* being a civil proceeding to enforce the civil right of personal liberty, and the sheriff having been made a party by the defendants in error, he had a right to be represented by counsel of his own selection. *Ex parte Tom. Tong*, 108 U. S. 556; *Ex parte Collier*, 6 Ohio St. 60;. *In re Sciever*, 42 Neb. 772; *State v. Collins*, 54 Iowa, 441; *In re Baker*, 56 Vt. 1; *Yudkin v. Gates*, 60 Conn. 426; *Hunt v. Haven*, 52 N. H. 162. A court of competent jurisdiction having passed upon the sufficiency of the complaint, the circuit court had no power or jurisdiction to pass upon the same question on *habeas corpus:* if error has been committed, it must be corrected on appeal or writ of error. *In re Blair*, 4 Wis. 522; *In re Eldred*, 46 Wis. 530; *In re Milburn*, 59 Wis. 24; *In re Graham*, 74 Wis. 450, 76 Wis. 366; *S. C.* 138 U. S. 461; *In re Rosenberg*, 90 Wis. 581; *In re Pikulik*, 81 Wis. 158; *Petition of Sember*, 41 Wis. 517, 523, 524; *In re French*, 81 Wis. 597; *In re Schuster*, 82 Wis. 610; *In re Eckart*, 85 Wis. 681; *State ex rel. Dunn v. Noyes*, 87 Wis. 340; *In re Roszcynialla*, 99 Wis. 534, 536; *In re Meggett*, 105 Wis. 291; subd. 2, sec. 3427, Stats. 1898; 3 Bl. Comm. 136; Hurd, Habeas Corpus (2d ed.), 332; Cooley, Const. Lim. (6th ed.), 423; 15 Am. & Eng. Ency. of Law (2d ed.), 166; *Ex parte Lees*, El., Bl. & El. 828; *Ex parte Roberson*, 123 Ala. 103; *State ex rel. Rea v. Kinmore*, 54 Minn. 135, 40 Am. St. Rep. 305; *Ex parte Phillips*, 57 Miss. 357; *Stoner v. State*,

The State ex rel. Durner vs. Huegin.

4 Mo. 614; *Ex parte Gafford,* 57 Pac. Rep. 484; *Ex parte Smith,* 2 Nev. 338; *Clifford v. Heller,* 63 N. J. Law, 105; *People ex rel. Trainor v. Baker,* 89 N. Y. 460; *People ex rel. Tweed v. Liscomb,* 60 N. Y. 559; *People ex rel. McLoughlin v. Wilson,* 88 Hun, 258; *People ex rel. Stern v. N. Y. Soc.* 27 Misc. (N. Y.), 457; *Matter of Brittain,* 93 N. C. 587; *In re Schenck,* 74 N. C. 607; *Ex parte Collier,* 6 Ohio St. 55; *Matter of Patswald,* 5 Okl. 789; *Williamson v. Lewis,* 39 Pa. St. 9; *State v. Everett,* Dudley (S. C.), 295; *Ex parte Ezell,* 40 Tex. 451; *Ex parte Hays,* 15 Utah, 77; *Matter of Lybarger,* 2 Wash. 131; *Ex parte Watkins,* 3 Pet. 193; *Ex parte Parks,* 93 U. S. 18; *In re Eaton,* 27 Mich. 1; *Emanuel v. State,* 36 Miss. 627; *State ex rel. Milwaukee v. Ludwig,* 106 Wis. 226; *State v. Davie,* 62 Wis. 305; *State ex rel. De Puy v. Evans,* 88 Wis. 255; *Ex parte Coy,* 127 U. S. 756; *Bergemann v. Backer,* 157 U. S. 655; *Turner v. Conkey,* 132 Ind. 248; *U. S. v. Horner,* 143 U. S. 570; *Burton v. Saunders,* 16 Oreg. 51; *Hauser v. State,* 33 Wis. 678; *Petition of Crandall,* 34 Wis. 177; *State ex rel. Welch v. Sloan,* 65 Wis. 647; *Benson v. McMahon,* 127 U. S. 457; *In re Cortes,* 136 U. S. 330. Whether sec. 4466a, Stats. 1898, is declaratory of the common law or in amplification thereof, the complaint in question sets out either a common-law or a statutory conspiracy. *U. S. v. Fisher,* 2 Cranch, 386; *Encking v. Simmons,* 28 Wis. 272; *Weill v. Kenfield,* 54 Cal. 111; *People v. Sheldon,* 139 N. Y. 251; *People v. Petheram,* 64 Mich. 252; *Walker v. Cronin,* 107 Mass. 555; *Arthur v. Oakes,* 63 Fed. Rep. 323; *Ertz v. Produce Exchange,* 79 Minn. 140; *State v. Glidden,* 55 Conn. 46; *Delz v. Winfree,* 80 Tex. 400; *Barr v. Essex Trades Council,* 53 N. J. Eq. 101; *State v. Stewart,* 59 Vt. 273; *Casey v. Cincinnati T. Union,* 45 Fed. Rep. 135; *Milwaukee M. & B. Asso. v. Niezerowski,* 95 Wis. 129; *Gatzow v. Buening,* 106 Wis. 1; *Plant v. Woods,* 176 Mass. 492; *Pacific F. Co. v. Adler,* 90 Cal. 110; *Texas S. O. Co. v. Adoue,* 83 Tex. 650; *Craft v. McConoughy,* 79 Ill. 346; *Judd v. Harrington,* 139 N. Y. 105;

Sutherland, Stat. Const. §§ 229–254; *State v. Crowley*, 41 Wis. 271; 1 Wharton, Crim. Law, § 364; *Van Rueden v. State*, 96 Wis. 671; *Jackson v. State*, 91 Wis. 253; *Ritchie v. People*, 155 Ill. 98; *State v. Loomis*, 115 Mo. 307; *Matter of Jacobs*, 98 N. Y. 98; *Hopkins v. Oxley S. Co.* 83 Fed. Rep. 912; *Temperton v. Russell*, [1893] 1 Q. B. Div. 715; *Mogul S. S. Co. v. McGregor*, 23 Q. B. Div. 598. The combination set out in the complaint, whether its purpose was solely to injure The Journal Company without resulting benefit to those in the combination, or to benefit themselves by driving a competitor out of business and thus establish a monopoly for itself, was unlawful, and the complaint in question stated an offense under the laws of Wisconsin. *Mapstrick v. Ramge*, 9 Neb. 390; *Gregory v. Duke of Brunswick*, 6 M. & G. 205; *Hartnett v. Plumber's S. Asso.* 38 L. R. A. 194; *Richardson v. Buhl*, 77 Mich. 632; *Beck v. Railway T. P. Union*, 118 Mich. 497; *Casey v. Cincinnati T. Union*, 45 Fed. Rep. 135; *Boutwell v. Marr*, 43 L. R. A. 803; *Jackson v. Stanfield*, 137 Ind. 592; *Van Horn v. Van Horn*, 52 N. J. Law, 284; *State v. Donaldson*, 32 N. J. Law, 151; *Carew v. Rutherford*, 106 Mass. 1; *Morris R. C. Co. v. Barclay C. Co.* 68 Pa. St. 173; *Wildee v. McKee*, 111 Pa. St. 335; *State v. Stewart*, 59 Vt. 273; *State v. Glidden*, 55 Conn. 46; *Santa Clara Valley M. & L. Co. v. Hayes*, 76 Cal. 387; *Sherry v. Perkins*, 147 Mass. 212; *People ex rel. Peabody v. Chicago G. T. Co.* 130 Ill. 268; *People v. North River S. R. Co.* 121 N. Y. 582; *Emery v. Ohio C. Co.* 47 Ohio St. 320; *Arnot v. Pittston & E. C. Co.* 68 N. Y. 558; *Pacific F. Co. v. Adler*, 90 Cal. 110; *Delz v. Winfree*, 80 Tex. 400; *Vulcan P. Co. v. Hercules P. Co.* 96 Cal. 510; *Chaplin v. Brown*, 83 Iowa, 156; *More v. Bennett*, 140 Ill. 69; *Crump v. Comm.* 84 Va. 927; *Lucke v. Clothing C. & T. Assembly*, 77 Md. 396; *Nester v. Continental B. Co.* 161 Pa. St. 473; *People v. Milk Exchange*, 145 N. Y. 267; *Longshore P. Co. v. Howell*, 26 Oreg. 527; *Distilling & C. F. Co. v. People ex rel. Att'y Gen.* 156 Ill. 448; *Bishop v.*

*Am. P. Co.* 157 Ill. 248; *Doremus v. Hennessy,* 176 Ill. 608; *Adams v. Brenan,* 177 Ill. 194; *Harding v. Am. G. Co.* 182 Ill. 551; *State ex rel. Snyder v. Portland N. G. & O. Co.* 153 Ind. 483; *Murray v. McGarigle,* 69 Wis. 483; *Murray v. Buell,* 74 Wis. 14; *Smith v. Nippert,* 76 Wis. 86, 79 Wis. 135; *Bratt v. Swift,* 99 Wis. 579; *Martens v. O'Connor,* 101 Wis. 18. The evidence taken before a committing magistrate cannot be reviewed by the officer issuing the writ of *habeas corpus. Schall v. Bly,* 43 Mich. 401; *Carver v. Chapell,* 70 Mich. 51; *Lord v. Wirt,* 96 Mich. 418; *Birdsall v. Phillips,* 17 Wend. 464; *People v. Comm'r's of East Hampton,* 30 N. Y. 76; *In re Bion,* 59 Conn. 372; *Ex parte Jones,* 96 Fed. Rep. 200; *U. S. v. Horner,* 143 U. S. 570; *Merriman v. Morgan,* 7 Oreg. 68; *People ex rel. Danziger v. House of Mercy,* 128 N. Y. 180; *Roberts v. Warren,* 3 Wis. 740; *Owens v. State,* 27 Wis. 456; *Baizer v. Lasch,* 28 Wis. 268; *State v. Huck,* 29 Wis. 202; *Callon v. Sternberg,* 38 Wis. 539; *Wright v. Wright,* 74 Wis. 439; *Fulton v. State,* 103 Wis. 238. The orders and the commitments issued thereon are sufficient successfully to withstand challenge on this proceeding. *Howard v. U. S.* 75 Fed. Rep. 986; *People ex rel. Trainor v. Baker,* 89 N. Y. 461; *People ex rel. Johnson v. Nevons,* 1 Hill, 154; *Ex parte Wilson,* 114 U. S. 422; *Turner v. People,* 33 Mich. 363; *Cargen v. People,* 39 Mich. 549; *Ex parte Gibson,* 31 Cal. 619; *State v. Bloom,* 17 Wis. 521; *Wilkinson v. State,* 106 Ala. 23; *State v. Cook,* 92 Iowa, 484; *Pointer v. U. S.* 151 U. S. 418; *Rindskopf v. State,* 34 Wis. 217, 224; *State v. Leicham,* 41 Wis. 573; *Hamilton's Case,* 51 Mich. 174; *Sennott's Case,* 146 Mass. 489; secs. 3429, 4774, Stats. 1898; sec. 7, ch. 6, Laws of 1895; 4 Ency. of Pl. & Pr. 576; *People ex rel. Hutchinson v. Murphy,* 58 N. E. Rep. 984; *Ex parte Kellogg,* 6 Vt. 511.

For the relator there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas* and *William H. Austin,* and oral argument by *Mr. J. G. Flanders* and *Mr. Austin.* To the point that the offense of conspiracy was sufficiently charged

in the complaint, in addition to authorities cited by the plaintiff in error, they cited Sutherland, Stat. Const. §§ 225, 229, 235, 254; 1 Kent, Comm. 462; *Martin v. Hunter's Lessee*, 1 Wheat. 304, 326; *Rex v. Turvey*, 2 Barn. & Ald. 522; 1 Bishop, Crim. Prac. (2d ed.), §§ 478, 479; *Toledo, A. A. & N. M. R. Co. v. Penn. Co.* 54 Fed. Rep. 730; *Continental Ins. Co. v. Board of Fire Underwriters*, 67 Fed. Rep. 310; *Bromage v. Prosser*, 4 B. & C. 255; *Hilton v. Eckersley*, 6 El. & Bl. 47, 74; *Old Dominion S. S. Co. v. McKenna*, 30 Fed. Rep. 48; *Thomas v. C., N. O. & T. R. Co.* 62 Fed. Rep. 803, 818; *Bohn Mfg. Co. v. Hollis*, 54 Minn. 223; *Annis v. People*, 13 Mich. 511. Even if the complaint did not charge an offense, it was error to discharge the defendants without an examination of the testimony to ascertain if the offense which the complaint purported to charge had been committed. Sec. 3429, Stats. 1898; *State v. Bloom*, 17 Wis. 521.

For the defendant in error *Huegin* there was a brief by *Van Dyke & Van Dyke & Carter*, and oral argument by *G. D. Van Dyke* and *W. E. Carter*. They contended, *inter alia*, that in *habeas corpus* proceedings to review a commitment by a police justice or other examining magistrate, the question whether there was *any evidence* of an offense, is now open for review, as it was at the date of the adoption of the constitution. Secs. 3425, 4791, 4792, Stats. 1898; *In re Henry*, 13 Misc. (N. Y.), 734; *Ex parte Dimmig*, 74 Cal. 164; *Ex parte Sternes*, 82 Cal. 245; *In re Snell*, 31 Minn. 110; *State v. Hayden*, 35 Minn. 283; *Ex parte Bailey*, 39 Fla. 726; *Ex parte Jones*, 96 Fed. Rep. 200; *Ex parte Parker*, 11 Neb. 309; 9 Ency. of Pl. & Pr. 1020; 16 id. 860, 861; Spelling, Extr. Rel. §§ 1299, 1300; 9 Am. & Eng. Ency. of Law, 193; 15 Am. & Eng. Ency. of Law (2d ed.), 199; Church, Habeas Corpus, §§ 231–236. A complaint or indictment charging a statutory offense in the language of the statute is sufficient except that, if the words of the statute do not of themselves fully, directly, and expressly, without any un-

certainty or ambiguity whatever, set forth all the elements necessary to constitute the offense intended to be punished, or, if they include within their scope acts or conduct which is not criminal or deserving of punishment and which it cannot be supposed the legislature intended to make punishable, it is not sufficient to charge the alleged offense in the language of the statute. *Steuer v. State,* 59 Wis. 472; *Gelzenleuchter v. Niemeyer,* 64 Wis. 316; *Peters v. State,* 66 Wis. 341; *Fischer v. State,* 101 Wis. 23; *State v. Crowley,* 41 Wis. 271; *U. S. v. Carll,* 105 U. S. 611; *Pettibone v. U. S.* 148 U. S. 197; *U. S. v. Cruikshank,* 92 U. S. 542; *U. S. v. Simmons,* 96 U. S. 360; *Comm. v. Clifford,* 8 Cush. 215; *Comm. v. Bean,* 14 Gray, 52; *Comm. v. Filburn,* 119 Mass. 297; *U. S. v. Britton,* 108 U. S. 199; *U. S. v. Pond,* 2 Curtis, C. C. 265; *U. S. v. Hess,* 124 U. S. 483; *Ledbetter v. U. S.* 170 U. S. 606; *In re Greene,* 52 Fed. Rep. 111; *Queen v. Peck,* 9 Adol. & El. 686; *Miles v. State,* 94 Ala. 106; *State v. Howard,* 66 Minn. 309, 61 Am. St. Rep. 403; *State v. Jackson,* 39 Conn. 229; *State v. Murray,* 41 Iowa, 580; *Quinn v. State,* 35 Ind. 485; *State v. Williams,* 32 S. C. 123; *Luter v. State,* 32 Tex. Cr. 69; *U. S. v. Patterson,* 55 Fed. Rep. 605; *St. Louis & S. F. R. Co. v. State,* 57 S. W. Rep. 796. The complaint as a whole states no offense known to the law. *Mogul S. S. Co. v. McGregor,* 23 Q. B. Div. 598; *Mogul S. S. Co. v. McGregor,* [1892] App. Cas. 35; *Allen v. Flood,* [1898] App. Cas. 1; 21 Reports Am. Bar Asso. (1898), 335; *Nat. P. Asso. v. Cummings,* 62 Alb. L. J. 68; *Delz v. Winfree,* 80 Tex. 400; Cooley, Torts, 125; *Kimball v. Harman,* 34 Md. 407; *Laverty v. Vanarsdale,* 65 Pa. St. 507; *Longshore P. Co. v. Howell,* 26 Oreg. 527; *Payne v. W. & A. R. Co.* 13 Lea, 507; *Heywood v. Tillson,* 75 Me. 225; *Raycroft v. Tayntor,* 68 Vt. 219; *Beck v. Ry. T. P. Asso.* 118 Mich. 497; *Doremus v. Hennessy,* 176 Ill. 608; *Barr v. Essex Trades Council,* 53 N. J. Eq. 101; *In re Greene,* 52 Fed. Rep. 118; *People v. Powell,* 63 N. Y. 88; *Queen Ins. Co. v. State,* 86

Tex. 250; *Ætna Ins. Co. v. Comm.* 51 S. W. Rep. 624; *Continental Ins. Co. v. Board of F. Underwriters,* 67 Fed. Rep. 310; *Orr v. Home Mut. Ins. Co.* 12 La. Ann. 255; *Hunt v. Simonds,* 19 Mo. 583; *Snow v. Wheeler,* 113 Mass. 186; *Carew v. Rutherford,* 106 Mass. 14; *Bohn Mfg. Co. v. Hollis,* 54 Minn. 223; *Macauley Bros. v. Tierney,* 19 R. I. 255; *Brewster v. Miller's Sons,* 38 L. R. A. 505; *Chambers v. Baldwin,* 91 Ky. 121; *Bourlier Bros. v. Macauley,* 91 Ky. 135; *Coeur D'Alene C. & M. Co. v. Miners' Union,* 51 Fed. Rep. 260; *Farmers' L. & T. Co. v. N. P. R. Co.* 60 Fed. Rep. 815; *Arthur v. Oakes,* 63 Fed. Rep. 310; *Boyson v. Thorn,* 98 Cal. 578; *Schulten v. Bavarian B. Co.* 96 Ky. 224; *Dueber W. C. Mfg. Co. v. Howard W. & C. Co.* 66 Fed. Rep. 645; *U. S. v. Addyston P. & S. Co.* 85 Fed. Rep. 271; *Casey v. Cincinnati T. Union,* 45 Fed. Rep. 135; *Bowen v. Matheson,* 14 Allen, 499; *Vegelahn v. Guntner,* 167 Mass. 92; *Dueber W. C. Mfg. Co. v. Howard W. & C. Co.* 55 Fed. Rep. 851; see also *Huttley v. Simmons,* [1898] 1 Q. B. Div. 181; *Hulbuck & Sons v. Wilkinson, H. & C.* [1899] 1 Q. B. Div. 86. The words "wilful" and "wilfully," in common parlance, mean intentionally, as distinguished from accidental and involuntarily; in the penal statutes they mean with evil intent, with legal malice, without ground for believing the act to be lawful. *Docter v. Riedel,* 96 Wis. 158; *Metzger v. Hochrein,* 107 Wis. 267; *Macauley Bros. v. Tierney,* 19 R. I. 255; Anderson, Law Dict. "Injury," "Wilful," "Wilfully;" *Mogul S. S. Co. v. McGregor,* 23 Q. B. Div. 612; *Parker v. Griswold,* 17 Conn. 302; *Chasemore v. Richards,* 7 H. L. Cas. 349; *Mayor of Bradford v. Pickles,* [1895] App. Cas. 587; *State v. Preston,* 34 Wis. 675; *State v. Castle,* 44 Wis. 670; *State v. Smith,* 52 Wis. 136, 137; *Potter v. U. S.* 155 U. S. 446; *Comm. v. Kneeland,* 20 Pick. 220; *Wass v. Stephens,* 128 N. Y. 123. The word "maliciously" means a wicked intention to do an injury. *Tuttle v. Bishop,* 30 Conn. 85; *U. S. v. Ruggles,* 5 Mason, 192; *Dexter v. Spear,* 4 Mason, 118; *Mogul S. S. Co.*

*v. McGregor*, 23 Q. B. Div. 612; Anderson, Law Dict. "Malice." When the act done is not unlawful the motive is immaterial. *Docter v. Riedel*, 96 Wis. 158; *Metzger v. Hochrein*, 107 Wis. 267; *Stevenson v. Newnham*, 76 Eng. C. L. 285; *Benjamin v. Wheeler*, 8 Gray, 409; *Randall v. Hazelton*, 12 Allen, 415; *Frazier v. Brown*, 12 Ohio St. 294; *Chatfield v. Wilson*, 28 Vt. 49; *Chasemore v. Richards*, 7 H. L. Cas. 349; *Mayor of Bradford v. Pickles*, [1895] App. Cas. 587; *Mahan v. Brown*, 13 Wend. 261.

W. H. *Timlin*, for the defendant in error *Aikens*, contended, *inter alia*, that mere joint action for the purpose of trade competition does not come within the purview of sec. 4466*a*, Stats. 1898. *Hunt v. Simonds*, 19 Mo. 583; *Orr v. Home Mut. Ins. Co.* 68 Am. Dec. 770; *Ætna Ins. Co. v. Comm.* 45 L. R. A. 355; *Beechley v. Mulville*, 102 Iowa, 602; *Allgeyer v. Louisiana*, 165 U. S. 578; *Folwell v. State*, 49 N. J. Law, 31; *In re Grice*, 79 Fed. Rep. 641; *Mogul S. S. Co. v. McGregor*, 21 Q. B. Div. 544; *Macauley Bros. v. Tierney*, 19 R. I. 255; *Bohn Mfg. Co. v. Hollis*, 53 Minn. 223, 55 N. W. Rep. 1119; *Lough v. Outerbridge*, 143 N. Y. 271; *Dueber W. C. Mfg. Co. v. Howard W. & C. Co.* 66 Fed. Rep. 644; *Walker v. Cronin*, 107 Mass. 555; *Delz v. Winfree*, 80 Tex. 400; *Boysen v. Thorn*, 21 L. R. A. 233; *Glencoe L. & G. Co. v. Hudson Bros. C. Co.* 138 Mo. 439; *Vegelahn v. Guntner*, 167 Mass. 92; *Frorer v. People*, 16 L. R. A. 492; *Chicago, B. & Q. R. Co. v. Chicago*, 166 U. S. 226. Assuming that the *mittimus* under which the sheriff attempted to justify his detention of defendant was sufficient on its face, it was avoided by showing that it was issued in a proceeding in which the police justice had no jurisdiction to issue a warrant and cause an arrest because no complaint clearly stating an offense was filed, nor jurisdiction to hold to bail because the evidence showed no offense had been committed. Sec. 4776, Stats. 1898; *Ex parte Kearny*, 55 Cal. 212; *In re Corryell*, 22 Cal. 178; *Ex parte Mirande*, 73 Cal. 365; *Bushel's*

*Case,* T. Jones, 13; *Housh v. People,* 75 Ill. 487; *In re Eberle,* 44 Kan. 472; Wilmot, Notes & Op. 107; *State ex rel. Milwaukee v. Newman,* 96 Wis. 273; *In re Eldred,* 46 Wis. 530; *Frazier v. Tierner,* 76 Wis. 562; *State ex rel. Larkin v. Ryan,* 70 Wis. 676; *State ex rel. Att'y Gen. v. Eau Claire Circuit Court,* 97 Wis. 1; *Ex parte Siebold,* 100 U. S. 376; *Ex parte Jackson,* 45 Ark. 158; *In re Barber,* 75 Fed. Rep. 980; *Ex parte Bailey,* 23 So. Rep. 552; *In re Hacker,* 73 Fed. Rep. 464; *Ex parte Kenyon,* 5 Dill. 389; *Nelson v. Cutter,* 3 McLean, 326; *Ex parte Hays,* 25 Fla. 282; *Smith v. Clausmeier,* 136 Ind. 105; *Ex parte Parker,* 11 Neb. 309; *Lueck v. Heisler,* 87 Wis. 644; *McGuire v. Bolen,* 94 Wis. 51; *Steen v. Norton,* 45 Wis. 412; *Darling v. Conklin,* 42 Wis. 478; *State ex rel. Kellogg v. Gary,* 33 Wis. 104; *Sitzman v. Pacquette,* 13 Wis. 302; 1 Smith, Lead. Cas. (7th ed.), 1095; *In re Bonner,* 151 U. S. 242; *People ex rel. Tweed v. Liscomb,* 60 N. Y. 567. If the words of sec. 4466a, "injuring another," are to be taken in their popular sense, then the statute is an unwarranted interference with the liberty of the citizen, and leaves him subject to prosecution and possible conviction in all cases of professional and business competition, where there is certainly injury in the sense of loss, impairment, or diminution of trade, business, or professional reputation, and where the jury choose to find that the exercise by the accused of his legal right was wilful or malicious, and such statute is also repugnant to the XIVth amendment to the constitution of the United States, and to sec. 1, art. I, Const. Wis. *In re Grice,* 79 Fed. Rep. 627; *Allgeyer v. Louisiana,* 165 U. S. 578; *Lawton v. Steele,* 152 U. S. 133; *People v. Gillson,* 109 N. Y. 399; *State v. Dalton,* 48 L. R. A. 775; *State v. Julow,* 29 L. R. A. 257; *Metzger v. Hochrein,* 107 Wis. 267; *Rideout v. Knox,* 148 Mass. 368.

*N. S. Murphey,* for the defendant in error *Hoyt,* contended, *inter alia,* that the commitment is barren of the statement that the alleged "conspiracy to injure" was done

" wilfully and maliciously " as required by the provisions of
sec. 4466*a*, Stats. 1898.  1 Arch. Crim. Pr. & Pl. (8th ed.),
note p. 151.  The commitment should also conclude " against
the form of the statute in that case made and provided."  1
Arch. Crim. Pr. & Pl. (8th ed.), note p. 151.  By demurrer
to the return, the whole question of the legality of the com-
mitment, both in respect to its form, substance, and the
validity of the law under which complaint is made, is fairly
presented.  *In re Booth*, 3 Wis. 23; *In re Booth*, 3 Wis. 157;
*In re Eldred*, 46 Wis. 530; *In re Milburn*, 59 Wis. 24.. If
the sheriff had returned the complaint, warrant, or certified
copy of minutes of the court, as the basis or authority to
detain the prisoner, they might have tended to cure defects
in the commitment.  *People ex rel. Trainor v. Baker*, 89 N. Y.
465; *Joab v. Sheets*, 99 Ind. 328.  A combination to diminish
an individual's gains or profits is lawful or unlawful accord-
ing to the means employed (2 Wharton, Crim. Law [10th
ed.], § 1337; *Comm. v. Hunt*, 4 Met. 111–134), and hence the
complaint or indictment must show the nature of the unlaw-
ful means employed.  2 Wharton, Crim. Law, 2322, 2323.
No conspiracy, except to commit felony upon the person of
another, or to commit arson or burglary, is deemed a con-
spiracy, and is to be punished as such, unless some act, be-
sides such agreement, be done to effect the object thereof,
by one or more of the parties.  Sec. 4568, Stats. 1898.  The
act to be done in pursuance of the conspiracy must be *quasi-
criminal or immoral*.  4 Am. & Eng. Ency. of Law, 598, note
8; Id. 604.  The act is not indictable unless the same act done
by one would have involved a criminal injury.  *Huttley v.
Simmons*, [1898] 1 Q. B. Div. 181.  Neither of the defendants
is charged with an *integral* offense, but an *integral* part of one,
and to complete it concert is necessary.  *Shannon v. Comm.*
14 Pa. St. 228.  When concert of action is necessary to
offense, conspiracy does not lie.  2 Wharton, Crim. Law,

(10th ed.), § 1339; *Shannon v. Comm.* 14 Pa. St. 226; *Miles v. State*, 58 Ala. 390.

On December 7, 1900, a reargument was ordered of the following question only: "Does the word 'injuring' in sec. 4466*a*, Stats. 1898, mean anything more than inflicting an injury for which a civil action for damages can be maintained, and if so is the law constitutional."

The cause was reargued January 15, 16, 1901.

For the plaintiff in error there was a brief signed by the *Attorney General*, and by *Winkler, Flanders, Smith, Bottum & Vilas, W. H. Austin*, and *A. C. Umbreit*, attorneys for the relator, and oral argument by *J. G. Flanders*.

The word "injuring" in the connection in which it is used has but one meaning, and that is its popular and ordinary meaning. Consequently there is no room for interpretation. The word is never used in the technical sense sought to be imputed to it, that is, in the limited sense of such acts of hurt or harm as the law would take cognizance of in a civil action for damages, except when the matter of civil damages is the subject in reference to which it is used; in other words, except when it is intended to express specifically the idea of a wrong which may be redressed in a civil action.   1 Kent, Comm. 462; *Waburton v. Loveland*, 1 Hud. & Brooke, 648; *Toldervy v. Colt*, 1 Mees. & W. 264; *Fairlee v. Corinth*, 9 Vt. 269; 23 Am. & Eng. Ency. of Law, 298, notes 1, 2; Sutherland, Stat. Const. §§ 229, 237, 254; *Rawson v. State*, 19 Conn. 299; *U. S. v. Gooding*, 12 Wheat. 460; Rutherford's Inst. B. 2, ch. 7, sec. 3; *Smith v. State*, 66 Md. 215; *Newell v. People*, 7 N. Y. 97; *Woodbury v. Berry*, 18 Ohio St. 462; *People ex rel. Hughes v. May*, 3 Mich. 598; Hawkins, P. C.,B. 1, ch. 27, sec. 2; *Rex v. Eccles*, 1 Leach, 274; 3 Chitty, Crim. Law, 1139; 2 Arch. Crim. Pr. & Pl. 1829; *Crump v. Comm.* 84 Va. 927; *State v. Stewart*, 59 Vt. 273; *State v. Donaldson*, 32 N. J. Law, 151, 156; *State v. Glidden*, 55 Conn. 46; *People v. Petheram*, 64 Mich. 252;

*State v. Burnham*, 15 N. H. 403; *Comm. ex rel. Chew v. Carlisle*, Brightly, 36; *Curran v. Galen*, 152 N. Y. 33; *Thomas v. C., N. O. & T. R. Co.* 62 Fed. Rep. 17; *Lucke v. Clothing Cutters & T. Assembly*, 19 L. R. A. 408; *State v. Buchanan*, 5 H. & J. 317; Eddy, Comb. & Consp. § 340; Greenhood, Pub. Pol. 651; *Doremus v. Hennessy*, 176 Ill. 608; *Barr v. Essex Trades Council*, 53 N. J. Eq. 101; *Hilton v. Eckersley*, 6 El. & Bl. 47, 74; *Old Dominion S. S. Co. v. McKenna*, 30 Fed. Rep. 48; *Casey v. Cincinnati T. Union*, 45 Fed. Rep. 138; *Callan v. Wilson*, 127 U. S. 547; *Mogul S. S. Co. v. McGregor*, 23 Q. B. Div. 598; *Continental Ins. Co. v. Board of F. Underwriters*, 67 Fed. Rep. 319; *Temperton v. Russell*, [1893] 1 Q. B. Div. 715; *Walker v. Cronin*, 107 Mass. 555; *Graham v. St. Charles St. R. Co.* 27 L. R. A. 416; *Arthur v. Oakes*, 63 Fed. Rep. 310; *Ertz v. Produce Exchange*, 79 Minn. 140; *Hopkins v. Oxley S. Co.* 83 Fed. Rep. 918.

The authorities conclusively establish the following propositions:

1. The civil action of conspiracy at common law was a substantive right of action, and did not necessarily depend upon a right independent of the conspiracy. (a) The fact of the combination and the element of actual malice might give a right of action where, without the conjunction of the combination and the element of malice, no action would lie. (b) In order to give rise to a right of civil action, actual damage, capable of legal measurement, must have resulted. *Beck v. Railway T. P. Union*, 42 L. R. A. 407, 419; *Doremus v. Hennessy*, 43 L. R. A. 797, 802; *Inter-Ocean Pub. Co. v. Associated Press*, 184 Ill. 438; *Ertz v. Produce Exchange*, 79 Minn. 140; *Walker v. Cronin*, 107 Mass. 562; *Delz v. Winfree*, 80 Tex. 400; *Graham v. St. Charles St. R. Co.* 47 La. Ann. 214; *Hopkins v. Oxley S. Co.* 28 C. C. A. 99.

2. The crime of conspiracy at common law was a substantive offense, not necessarily dependent upon the crimi-

The State ex rel. Durner vs. Huegin.

nality or unlawfulness of the thing done, or of the measures by which it was to be accomplished. It has its foundation in public policy and in the peace and good order of society, and has no necessary connection whatever with any question of civil damages or pecuniary loss to particular individuals. *Rex v. Leigh (Macklin's Case)*, 2 Camp. 372, note; *Clifford v. Brandon*, 2 Camp. 358; *Boutwell v. Marr*, 71 Vt. 6; 1 Kent, Comm. 402; *McGinley v. Laycock*, 94 Wis. 205; *People v. Sheldon*, 139 N. Y. 251. The act giving to the word "injury" its ordinary meaning is not unconstitutional. *Foster v. Essex Bank*, 16 Mass. 270; *Wadsworth v. U. P. R. Co.* 18 Colo. 600; *Probasco v. Raine*, 50 Ohio St. 390; *Beyman v. Black*, 47 Tex. 558; *People v. Rosenberg*, 138 N. Y. 410; *Durkee v. Janesville*, 28 Wis. 464.

It must be a very extreme case which would warrant the court in holding a statute unconstitutional, unless some specific provision of the constitution can be pointed out which was violated. The statute in question does not unduly restrict the freedom of the right of the individual to carry on his own business in his own way. The police power of the state is, and must be from its very nature, incapable of any very exact definition, but all courts agree that it extends to all regulations affecting the lives, limbs, health, comfort, good order, morals, peace, and safety of society, and therein may be exercised on many subjects and in numerous ways. The statute in question does not conflict with any provision of the state constitution or with the Fourteenth amendment to the United States constitution. *Allgeyer v. Louisiana*, 165 U. S. 589; *Munn v. Illinois*, 94 U. S. 113, 124; *Slaughter House Cases*, 16 Wall. 62; *Barbier v. Connolly*, 113 U. S. 31; *Soon Hing v. Crowley*, 113 U. S. 709; *Thorpe v. R. & B. R. Co.* 27 Vt. 140, 149; *State v. Heinemann*, 80 Wis. 253, 256; *Baker v. State*, 54 Wis. 372; *State ex rel. Larkin v. Ryan*, 70 Wis. 681. As instances: Quarantine regulations. *Watertown v. Mayo*, 109 Mass. 315; *Beer Co. v. Mass.* 97

The State ex rel. Durner vs. Huegin.

U. S. 25; *Milwaukee v. Gross,* 21 Wis. 241; *Taylor v. State,* 35 Wis. 298. Regulation of the erection of buildings in certain limits. Cooley, Const. Lim. (6th ed.), 39; *Wadleigh v. Gilman,* 12 Me. 403; *Vanderbilt v. Adams,* 7 Cow. 349; *Baker v. Boston,* 12 Pick. 184. Regulation of the practice of medicine. *Dent v. West Virginia,* 129 U. S. 114; *Hawker v. New York,* 170 U. S. 189; *People v. Phippen,* 70 Mich. 6. Regulating practice of dentistry. *Ferner v. State,* 151 Ind. 247; *Comm. v. Gibson,* 7 Pa. Dist. Rep. 386; *State v. Vandersluis,* 42 Minn. 129; *State v. Creditor,* 44 Kan. 565. Regulating pharmacists. *State v. Heinemann,* 80 Wis. 253. Pure food laws. *People v. West,* 106 N. Y. 293; *People v. Cipperly,* 101 N. Y. 634; *State v. Campbell,* 64 N. H. 402. Oleomargarine laws. *People v. Aerensberg,* 105 N. Y. 123; *Comm. v. Huntley,* 156 Mass. 236; *State v. Marshall,* 64 N. H. 549; *Powell v. Pennsylvania,* 127 U. S. 678; *State v. Addington,* 77 Mo. 110; *State ex rel. Weideman v. Horgan,* 55 Minn. 183; *Palmer v. State,* 39 Ohio St. 236. Regulation of hawkers and peddlers. *Morrill v. State,* 38 Wis. 428.

Even should the word "injuring" be held to mean no more than to inflict an injury for which a civil action would lie, the complaint in this case states an offense within the statute, the combination alleged having all the elements of a boycott. Anderson, Law Dict. "BOYCOTT;" *Moores & Co. v. Bricklayers' Union,* 7 Ry. & Corp. Law J. 108; *Toledo, A. A. & N. M. R. Co. v. Penn. Co.* 54 Fed. Rep. 730, 738; *State v. Donaldson,* 32 N. J. Law, 151; *Old Dominion S. S. Co. v. McKenna,* 30 Fed. Rep. 48; *Lucke v. Cincinnati C. & T. Assembly,* 19 L. R. A. 408; *Thomas v. Cincinnati, N. O. & T. R. Co.* 62 Fed. Rep. 17; *Arthur v. Oakes,* 63 Fed. Rep. 310.

For the defendants in error there was a brief signed by *Van Dyke & Van Dyke & Carter,* attorneys for *Huegin, W. H. Timlin,* attorney for *Aikens,* and *N. S. Murphey,* attorney for *Hoyt;* and the cause was argued orally by *G. D.*

*Van Dyke.* They contended, *inter alia,* that the statute in question should be construed strictly, because (a) it is a penal statute, (b) in derogation of the common law, (c) of common right, and (d) interferes with legitimate business competition. Black, Interp. Stats. 300, 301; Sutherland, Stat. Const. §§ 346, 349, 350, 370; *Stone v. Lannon,* 6 Wis. 497; *Cohn v. Neeves,* 40 Wis. 393; *Cook v. M., St. P. & S. S. M. R. Co.* 90 Wis. 646. Inasmuch as the word "injuring" has two distinct meanings, one the popular and broad meaning and the other a peculiar and appropriate meaning in the law, the latter meaning should be adopted. Subd. 1, sec. 4971, Stats. 1898; Sutherland, Stat. Const. §§ 253, 254; Black, Interp. Stats. 232, 233; *Western Union T. Co. v. Scircle,* 103 Ind. 229; *Buckner v. Real Estate Bank,* 5 Ark. 536; *Hillhouse v. Chester,* 3 Day, 211. Notwithstanding the liberal construction of the bill of rights (sec. 9, art. I, Const.) there are still acts *damnum absque injuria* in this state. *Metzger v. Hochrein,* 107 Wis. 267; *Duffies v. Duffies,* 76 Wis. 374; *Doctor v. Riedel,* 96 Wis. 158; *Heiss v. M. & L. W. R. Co.* 69 Wis. 555. As examples where the word "injury" or "injured" has been held to mean such a legal wrong as would be the subject of an action for damages at common law, see *Pennsylvania R. Co. v. Marchant,* 119 Pa. St. 541; *Pennsylvania S. V. R. Co. v. Walsh,* 124 Pa. St. 544; *Janesville v. Carpenter,* 77 Wis. 238; *Brittle Silver Co. v. Rust,* 51 Pac. Rep. 526; *Jordon v. State,* 142 Ind. 427; 11 Am. & Eng. Ency. of Law, 1, note 1; *People v. Howard,* 17 Cal. 63; *North Vernon v. Voelger,* 103 Ind. 314; *Smith v. Wilcox,* 47 Vt. 537; *Woodruff v. North B. G. M. Co.* 18 Fed. Rep. 753, 781; *Talcott v. Buffalo,* 125 N. Y. 280; *Chittenden v. Wurster,* 152 N. Y. 435; *Whitney v. Hirsch,* 39 Hun, 325; *Gibbs v. McNeeley,* 102 Fed. Rep. 594.

In sec. 4466a, Stats. 1898, the words "wilfully and maliciously" modify the words "injuring another." If this word "injuring" be given its popular meaning, then we

have the anomaly of an act punishing as criminal a mere agreement to do a lawful act by any lawful means, if done wilfully or maliciously. It makes the motive, the mere mental operation, the *corpus delicti*, irrespective of any overt act. *State v. Clark*, 29 N. J. Law, 96; *Cohn v. Neeves*, 40 Wis. 393; *Folwell v. State*, 49 N. J. Law, 31. Where a court has sustained a civil action for damages or for an injunction, such decision affirms that the acts of which the plaintiff complains were such as constituted an injury within the legal meaning of the word. Strikes and boycotts under many different circumstances, and employing many different means, have been held to constitute such injury, but always excluding combinations for competitive purposes. *Barr v. Essex Trades Council*, 53 N. J. Eq. 101; *Ertz v. Produce Exchange*, 79 Minn. 140; *Delz v. Winfree*, 80 Tex. 400; *Walker v. Cronin*, 107 Mass. 562; *Graham v. St. Charles St. R. Co.* 47 La. Ann. 214; *Vegelahn v. Guntner*, 167 Mass. 92; *Beck v. Railway T. P. Union*, 118 Mich. 497; *Casey v. Cincinnati T. Union*, 45 Fed. Rep. 135; *Lucke v. Clothing Cutters & T. Assembly*, 77 Md. 396; 28 Am. L. Rev. 47, 80–84; 21 Am. L. Rev. 509, 764; *Curran v. Galen*, 152 N. Y. 33; *Hollenbeck v. Ristine*, 105 Iowa, 488. If the words "injuring another by any means whatever" be interpreted in their broad popular meaning, and thereby the statute be extended to include all agreements to do lawful acts by lawful means which may prejudice another in his reputation, trade, business, or profession, under the facts in the case at bar, it violates rights guaranteed by the constitution of this state, viz: Secs. 1, 8, and 13, art. I, Const. Wis. It also violates the XIVth amendment of the federal constitution, which declares:

"No state shall enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law," etc.

The liberty of enjoying one's property either singly or conjointly with others in any legal manner; of engaging singly or conjointly with others in any lawful trade or business; and of contracting with others for that purpose, are rights guaranteed to every citizen, although injury in the broad sense may result to some one.   To deny citizens such rights, by making it a crime to exercise one's legal rights, takes away all "liberty," deprives him of his property without any compensation, and holds him to answer for a criminal offense without due process of law.   *State v. Julow*, 129 Mo. 163, 50 Am. St. Rep. 443, and note; *Matter of Jacobs*, 98 N. Y. 98; *People v. Gillson*, 109 N. Y. 389, 405; *Godcharles v. Wigeman*, 113 Pa. St. 431; *Comm. v. Perry*, 155 Mass. 117; *State v. Wyatt*, 48 L. R. A. 265; *State v. Loomis*, 21 L. R. A. 789, and note; *State v. Goodwill*, 33 W. Va. 179, 25 Am. St. Rep. 863, 881, note; *Palmer v. Tingle*, 55 Ohio St. 423; *Shaver v. Penn. Co.* 71 Fed. Rep. 931; *Vilas v. McDonough Mfg. Co.* 91 Wis. 617; *Mallory v. La Crosse A. Co.* 80 Wis. 180; *Jones v. Great Southern F. H. Co.* 79 Fed. Rep. 477, 482; *In re Eight Hour Law*, 21 Colo. 29; *Holden v. Hardy*, 169 U. S. 366; *Low v. Rees P. Co.* 41 Neb. 127; *In re House Bill No. 203*, 21 Colo. 27; *Frorer v. People*, 141 Ill. 171, 16 L. R. A. 492; *Richie v. People*, 155 Ill. 98, 46 Am. St. Rep. 315, and note; *Harding v. People*, 160 Ill. 459; *Chicago v. Netcher*, 183 Ill. 104, 48 L. R. A. 261, and note; *Ruhstrat v. People*, 185 Ill. 133, 49 L. R. A. 181; *Ex parte Bailey*, 23 So. Rep. 553; *State v. Dalton*, 48 L. R. A. 775; *Valentine v. Berrien Circuit Judge*, 83 N. W. Rep. 594; *Kuhn v. Common Council of Detroit*, 70 Mich. 534; *In re Ah Jow*, 29 Fed. Rep. 181; *Allgeyer v. Louisiana*, 165 U. S. 578; *Frisbie v. U. S.* 157 U. S. 160, 165; *Chicago, B. & Q. R. Co. v. Chicago*, 166 U. S. 226; *Butchers' Union S. H. & L. S. L. Co. v. Crescent City L. S. L. & S. H. Co.* 111 U. S. 757; *Lawton v. Steele*, 152 U. S. 133; *In re Grice*, 79 Fed. Rep. 627; *In re Marshall*, 102 Fed. Rep. 323.   It is obvious from the cases cited that a statute

such as sec. 4466*a* broadly construed finds no support in the police power, but is clearly an unlawful interference with the exercise of private rights. No question of public health, public safety, or public morals is involved. *Lawton v. Steele,* 152 U. S. 136; *State v. Dalton,* 48 L. R. A. 775; *State v. Loomis,* 21 L. R. A. 789.

MARSHALL, J. Because of the long delay in announcing the decision in this case it is deemed proper to say, as a justification therefor, that the number and importance of the questions involved were such that the case seemed to call for the most careful study by each member of the court which the amplest opportunity therefor would permit, and to require that a decision should be rendered only when it could embody the best judgment of each such member, if that result could be reached within such time as not, by reason of the delay, to materially prejudice the administration of justice. There is room for congratulation that the purpose of the long deliberation upon the case has been accomplished. To circumstances which were unavoidable, preventing that full discharge of official duty, as regards individual study of the case, which was desired prior to settling upon the final conclusions, the delay must be in the main attributed. The questions legitimately discussed by counsel are so numerous that in the preparation of the opinion a choice had to be made between stating mere conclusions with appropriate supporting authorities, and discussing such questions at length. By the former method a brief opinion would have sufficed to cover the case; by the latter a lengthy opinion was unavoidable. The former course would have required but little labor compared with the latter, but it seemed that the careful preparation of the case and presentation of it by numerous and able counsel for the respective parties could not be adequately responded to, so as to fairly indicate the appreciation felt here for the assistance received from such preparation and presentation,

otherwise than by a pretty full discussion of each of the points decided which counsel upon either side deemed of sufficient importance to require them to present for that purpose. Acting upon that conviction we will discuss each of such points with sufficient fullness to satisfy all reasonable expectation and endeavor to make the conclusions reached a definite declaration of the law, so that, in addition to adjudicating the rights of the parties to the suit, the result will be valuable, as regards each point presented, in guiding the courts and the profession in this state in future cases.

Opposition to the motion on behalf of the relator to be heard in this court by private counsel in his behalf, was based on the following grounds: (1) It involves consideration of one of the errors claimed to have been committed by the court below which should only take place upon the consideration of the other errors. (2) The attorney general is required by sec. 163, Stats. 1898, to appear for the state and prosecute or defend all proceedings in the supreme court, in which the state is interested or a party, and that precludes appearance by private counsel in criminal proceedings, the law being the same as to the attorney general in the supreme court as it is as to the district attorney in the circuit court. (3) The sheriff is not a party and has no personal interest in the result of the review of the proceedings called in question by the writs of error. Each of such propositions involves an important question of practice, which is regulated either by statute or by the judicial policy of the state, and has received consideration resulting in the following conclusions:

1. If the sheriff of Milwaukee county by whom the state sued out the writ of error, is a party to the proceedings in this court and in any event is entitled to be heard as such he cannot be denied that right because to allow it would be inconsistent with a ruling of the court below, sought to be

reviewed by the writ of error. If he is properly here as a party, obviously, his rights as such cannot be jeopardized by any decision made by the court below which is a subject for review on the writ of error. That seems too clear for reasonable controversy. If counsel's position be correct, no person denied the right to be heard in a trial court upon the ground that he is not interested in the controversy, can be heard on appeal from the decision except there be a judgment for costs against him, because recognition here to present his case would be a recognition of his claim that he was a party to the proceeding in the trial court. We cannot sanction that doctrine. The sheriff was the actor in suing out the writ of error. He appears at the bar of the court and asks to be heard by counsel. If he is a party to the proceeding he must be heard regardless of any incidental bearing the decision may have upon any question involved in the review of the proceedings upon the writ. Manifestly, if he was a party in interest in the *habeas corpus* proceedings he was a party to the suit commenced in this court by the writ of error to review the result thereof, if he was bound thereby to his injury, to some appreciable degree, either directly and immediately or so that direct injury of some sort may probably come to him therefrom; in short, if he is "a party aggrieved." Our appeal statute on that point (sec. 3048, Stats. 1898) is no broader at most than the common-law rules governing the subject of parties in suits commenced by writs of error, or sec. 3043. A writ of error lies in favor of him "who is a party to the record;" a man who "is aggrieved by an error in the foundation, proceeding, judgment, or execution, in suit," said Justice GRIER in *Bayard v. Lombard*, 9 How. 530, quoting from early common-law writers. See, also, 7 Ency. of Pl. & Pr. 856. That the relator here is a party aggrieved within the rule stated it seems is quite clear, but we will refer to the subject more at length in the discussion of the third proposition.

The State ex rel. Durner vs. Huegin.

2. The second proposition assumes that proceedings to test the right of a person to his personal liberty are criminal in character and governed by the rule declared in *Biemel v. State*, 71 Wis. 444; *State v. Duff*, 83 Wis. 291, and other cases. Whether *habeas corpus* proceedings are in their nature civil or criminal we do not deem necessarily material. If the decision were to turn on that question, though, as at present advised, it would result in favor of the proposition that the remedy by *habeas corpus* is a civil remedy, as contended by the relator. The writ *ad faciendum, subjiciendum, et recipiendum* of the common law was the sole legal remedy of a person wrongfully restrained of his liberty. The purpose of a proceeding instituted by it was not to punish for the wrongful act of restraining him of his liberty, nor did it concern, necessarily, the wrongful act causing his detention. It was confined to compelling the immediate human instrument of the unlawful restraint to restore his victim to liberty notwithstanding any charge made against him. The case cited to our attention by relator's counsel (*Ex parte Tom Tong*, 108 U. S. 556, opinion by WAITE, C. J.) states briefly and clearly the true nature of such proceedings, as they are uniformly regarded in the books:

"The writ of *habeas corpus* is the remedy which the law gives for the enforcement of the civil right of personal liberty. Resort to it sometimes becomes necessary, because of what is done to enforce laws for the punishment of crimes, but the judicial proceeding under it is not to inquire into the criminal act which is complained of, but into the right of liberty notwithstanding the act. Proceedings to enforce civil rights are civil proceedings, and proceedings for the punishment of crimes are criminal proceedings. In the present case the petitioner is held under criminal' process. The prosecution against him is a criminal prosecution, but the writ of *habeas corpus* which he has obtained is not a proceeding in that prosecution. On the contrary it is a new suit brought by him to enforce a civil right, which he claims, as against those who are holding him in custody under the criminal process."

In a later case, *Cross v. Burke*, 146 U. S. 82, the court, speaking by FULLER, C. J., said: "It is well settled that a proceeding in *habeas corpus* is a civil and not a criminal proceeding." So the authorities in this state, that it is the policy of the written law that no one but the public prosecutor or his assistant duly appointed shall be permitted to represent the commonwealth in criminal cases against the accused, do not extend to a civil action or proceeding in the nature of a civil suit commenced by the issuance of a writ of *habeas corpus*, because, if for no other reason, it is not a criminal suit. The law that makes it the duty of the district attorney of a county to appear and prosecute or defend all actions, applications, or motions, civil or criminal, in the courts of his county wherein the state is interested or a party, except for assault and battery (sec. 752, Stats. 1898), precludes legal services being rendered by way of assisting the district attorney in a civil matter at public expense. That has often been decided. *McDonald v. Milwaukee Co.* 41 Wis. 642; *Manitowoc Co. Sup'rs v. Sullivan*, 51 Wis. 115; *Cutts v. Rock Co.* 58 Wis. 642; *State v. Duff*, 83 Wis. 291; *Frederick v. Douglas Co.* 96 Wis. 411. But it has nowhere been decided that the state's attorney, either of the county or the state at large, cannot obtain or receive assistance at his own expense or the expense of others in a civil proceeding. In *McDonald v. Milwaukee Co.*, *supra*, the sheriff employed counsel to defend against proceedings commenced by writ of *habeas corpus*. He made a claim against the county for his disbursements for such services. The claim was held invalid, because of the duty of the district attorney of the county to attend to such matters as a part of his official duties, made so by sec. 3433, Stats. 1898, which provides that when it appears from the return to a writ of *habeas corpus* that the person seeking to obtain his liberty is detained upon a criminal accusation, no order shall be made for his discharge until opportunity shall be given to the dis-

trict attorney of the county to be heard, if to be found within the county; and because such provision is exclusive of the right of the sheriff to employ counsel at public expense. The case must be read in the light of what was under consideration, that is, the right of the sheriff to employ counsel at public expense. There is nothing in that to militate against a person other than the district attorney standing in court as the representative of the people in a civil action by consent of the public attorney. No judicial policy with which we are familiar is thereby violated, nor any constitutional right. Such a representative cannot claim compensation for his services except as against the individual employing him. That is as far as the decisions of this court go. No reason is perceived why a reputable attorney in a mere civil action cannot be heard in court on behalf of the state by permission of the officer whose duty it is to stand responsible for the due protection of the public interests, without the violation of any right secured by the constitution or any law, to the person standing in the capacity of an adversary to the public in the proceedings. It has been the universal practice in this state to permit private counsel in this particular class of cases, as is abundantly shown by the decisions cited by counsel for the relator. *In re Booth*, 3 Wis. 1; *In re Falvey*, 7 Wis. 630; *In re Pierce*, 44 Wis. 411; *In re Eldred*, 46 Wis. 530; *State ex rel. Dunn v. Noyes*, 87 Wis. 340; *State ex rel. Larkin v. Ryan*, 70 Wis. 676; *In re Rosenberg*, 90 Wis. 581.

3. What has been said goes upon the theory that the state is the only party interested in *habeas corpus* proceedings adversely to the petitioner, when the person alleged to be wrongfully restrained of his liberty is detained upon a criminal charge; but, as indicated in the brief discussion of the first proposition, we cannot agree with the learned counsel for defendants in error that the respondent in such a proceeding is not a party thereto. The issuance of a writ of

*habeas corpus* is to all intents and purposes the commencement of a civil action, not an action strictly so called, within the meaning of sec. 2629, Stats. 1898, to be commenced by the issue of a formal summons, but in the same sense that proceedings to enforce the remedy by *mandamus* and proceedings by writ of error are civil suits, as has been repeatedly held. The issuance of the writ is the commencement of a proceeding in a court of justice for the enforcement or protection of a right within the meaning of sec. 2595. In *Ex parte Tom Tong*, 108 U. S. 556, the issuance of the writ of *habeas corpus* was denominated the commencement of a suit to enforce a civil right. That was said in the same sense that this court declared, in *Paine v. Chase*, 14 Wis. 653, that the issuance of a writ of error is the commencement of an original suit and regarded as the commencement of an action, and in the same sense that it was said, in *State ex rel. G. B. & M. R. Co. v. Jennings*, 56 Wis. 113, that a proceeding by *mandamus* is essentially a suit. True, the issuance of either of the writs mentioned, as before indicated, is not the commencement of an action strictly so called within the meaning of the Code, because it is there declared that all remedies in courts of justice are divided into actions and special proceedings (sec. 2594, Stats. 1898) and that a civil action shall be commenced by the service of a summons (sec. 2629). But the grant of power to circuit courts to issue writs of *habeas corpus* and *mandamus*, among other common-law writs, contemplated their use for the purposes they were devoted to before the adoption of the Code, i. e., for the commencement of suits within the broad meaning of the term; and their essential character in that regard has not been and cannot be changed by any legislative enactment. Whether the issuance of such a writ be called by the Code the commencement of a civil action or a special proceeding, it is to all intents and purposes the commencement of a suit and the final determination thereof is a final judgment in a suit or

The State ex rel. Durner vs. Huegin.

proceeding in the nature of a civil action. In *Holmes v. Jennison*, 14 Pet. 540, 564, Chief Justice TANEY said: "If a party is unlawfully imprisoned, the writ of *habeas corpus* is his appropriate legal remedy. It is his suit in court to recover his liberty." The court further said, in effect, that the term "proceedings in a suit" and the term "proceedings in an action" are synonymous; that when a law confers, in general terms, jurisdiction upon an appellate court to review on writ of error the final judgment in any suit, it includes jurisdiction to review the final determination in *habeas corpus* proceedings.

It follows from what has been said that the *habeas corpus* proceedings in question must be regarded as a civil action— an ordinary proceeding in a court of justice to enforce a personal right,— within the meaning of sec. 2595, Stats. 1898, which says that such a proceeding is an action. That is in harmony with the decisions of this court to the effect that, without any statutory regulations, a writ of error lies to review a final determination on *habeas corpus* (*State ex rel. McCaslin v. Smith*, 65 Wis. 93), and with *State v. Kemp*, 17 Wis. 669, and cases which followed it, denying to the state the use of the writ of error in criminal cases. That rule was one of judicial policy only, in a field where it was supposed the court was free to establish the law for this state, and has been abrogated by statute (sec. 3043, Stats. 1898). This was the suit of the defendants in error and their only adequate remedy to vindicate their right of personal liberty. The immediate instrument of the wrong complained of was the sheriff of Milwaukee county. The petitioners for the writ sought to establish their right to personal freedom notwithstanding the commitment under which the sheriff justified his conduct. They were, to all intents and purposes, plaintiffs, within the meaning of sec. 2601, regardless of the name by which such parties are commonly known. The adverse party on the record was the sheriff. He was

to all intents and purposes the defendant in the proceedings, regardless of the name by which such a party is commonly known. The statute (sec. 2595) says: "An action is an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right," and unless the state is the plaintiff and the proceeding is against the defendant for the punishment of a criminal offense, it is a civil action, and every person necessary to a complete determination of the controversy as against the plaintiff is a necessary party and an interested defendant. Sec. 2603. The term "party to a suit [or action]" applies as properly to persons seeking, by writ of *habeas corpus*, to vindicate their right to personal freedom, and to the adverse party who is restraining them of it, as to contestants upon the record in any other suit. The former are persons seeking to establish their legal rights; the latter, persons on whom it is sought to impose an immediate duty or liability to recognize such rights. 15 Ency. of Pl. & Pr. 463.

Upon the district attorney was imposed the duty of guarding the interest of the state, but he had no duty to perform by virtue of his office for the sheriff as an individual. The latter was a party, and an interested party, because he was charged with being guilty of the particular wrong which it was the purpose of the writ to redress; hence the law must be construed as according to him the same right as to any other party to be heard by counsel. True, as counsel for defendant in error say, sec. 3436, Stats. 1898, protected the sheriff from any liability for obeying the order discharging, or directing a discharge of, the prisoners, but there is no statute protecting him from liability for the wrongful imprisonment.

We are not unmindful that there are decisions to the effect that an adjudication in *habeas corpus* proceedings is not binding in a subsequent suit to vindicate the same right be-

tween the parties, or a suit between such parties where the same question is material. *In re Quinn,* 2 App. Div. 103; *People ex rel. Lawrence v. Brady,* 56 N. Y. 182; Hurd, Habeas Corpus, § 386. That doctrine was based on a supposed common-law rule that a decision on *habeas corpus* is not subject to review on appeal or writ of error. Such doctrine has been modified by judicial policy in many jurisdictions and in others displaced by statute, as it has been in this state, so far as it before prevailed here. Church, Habeas Corpus (2d ed.), 577; *Ex parte Cuddy,* 40 Fed. Rep. 62; *Perry v. McLendon,* 62 Ga. 598; *Ex parte Jilz,* 64 Mo. 205. Sec. 3437, Stats. 1898, which is the same as the Missouri statute that governed *Ex parte Jilz,* expressly changed the common-law rule as regards the effect of a final determination of a *habeas corpus* proceeding. It expressly prohibits the commencement of a second *habeas corpus* proceeding for the same cause, while the determination in the first remains unreversed. That, and the remedy for a review of such a final determination by writ of error sued out by either party to the writ, which is given by our statute (sec. 3043), effectually changed the common-law rule, so that the doctrine of *res adjudicata* has now the same applicability to *habeas corpus* proceedings as to other suits.

We have not overlooked the suggestion that the doctrine that ruled *McCarty v. Sup'rs of Ashland Co.* 61 Wis. 1; *People ex rel. Breslin v. Lawrence,* 107 N. Y. 607; and *Bryant v. Thompson,* 128 N. Y. 427, and some other cases, applies to the status of a person defending against the charge in *habeas corpus* proceedings of unlawfully restraining another of his liberty. That doctrine is that a person or tribunal, exercising judicial functions between parties, is not a party to a proceeding to challenge a decision made by him so that he may himself take an appeal or be a party to an appeal involving such decision. In *McCarty v. Sup'rs of Ashland Co.* a decision of the board of supervisors had been reversed on

writ of *certiorari* and the board attempted to appeal. In *People ex rel. Breslin v. Lawrence* a judge whose decision of a matter had been reversed on *certiorari* attempted to appeal. The mere statement of the circumstances under which courts have applied the doctrine referred to is sufficient to show that it has no application here. If the court that heard the *habeas corpus* proceedings or the examining magistrate were here claiming to be a party to the writ of error, and demanding an opportunity to be heard, the cases cited by counsel would be in point. It has been repeatedly held that a person or body not acting in a judicial capacity, but a party to a judicial proceeding as a representative of the public, even though having no pecuniary interest in the litigation, has an appealable interest in a judgment adverse to his or their authority. *State ex rel. School Dist. No. 2 v. Wolfrom,* 2 5 Wis. 468; *Moede v. Stearns Co.* 43 Minn. 312; *People v. Jones,* 110 N. Y. 509.

What has been said, it seems, covers every suggestion that has been made why the sheriff of Milwaukee county was not entitled to be heard by counsel in the circuit court in the *habeas corpus* proceedings and why he is not entitled to be heard in this court as a party to the writ of error. He was and is a party in every sense of the word, and is, so far as concerns himself, entitled to be heard by counsel of his own choosing.

The first question on the merits is, Does the warrant of commitment state any offense known to the laws of this state? That involves an inquiry into whether a statement of the facts — necessary to the jurisdiction of the offense, if there be one, and in substance that the person named in the commitment on a particular day named, was brought before the court charged on oath with committing the offense of conspiring to injure, and that such court, from the examination had, was satisfied that the offense charged had been committed and that there was reasonable ground to

believe such person guilty thereof — shows an adequate cause for holding such person for trial. Defendants in error claim that it does not, because it fails to show, in detail, the existence of the facts necessary to constitute the offense of conspiring to injure, with some approach at least to the technical accuracy of an indictment at common law, so as to identify the alleged wrongful conduct with either the common-law offense of conspiracy or the offense stated in sec. 4466a, Stats. 1898. Counsel do not state the rule of certainty by which they contend the commitment should be tested in the exact language we have used, but it seems from their reasoning that what has been said fairly expresses their contention. They say the warrant was fatally defective because it did not show with whom the person named therein conspired, nor the fact that there was more than one guilty participant so as to make a combination possible; that it failed to state the facts constituting the offense; that it omitted to recite that the alleged combination was entered into for the purpose of wilfully and maliciously injuring another; that it did not literally follow the statute; and that it did not conclude with the words "against the form of the statute in such case made and provided."

We do not understand that any such degree of certainty in a commitment as that contended for is required. Authorities may be found here and there tending to support counsel's contention; for example *Ex parte Branigan*, 19 Cal. 133, cited to our attention, which is contrary to later decisions made by that court and out of harmony with the current of authority, as we shall show. The general rule is that it is sufficient, in a commitment for trial, to state with reasonable clearness the nature of the offense with which the person is charged, and conclusions of fact in general language, justifying his detention on such charge; that a statement of the specific facts in detail, on which the charge is based, is unnecessary. A multitude of authorities to that effect

might be cited, commencing with the older books and coming down to date. In *Collins v. Brackett*, 34 Minn. 339, the offense charged was one created by statute. The particular section was not referred to, nor were the facts essential to the offense stated in detail; but there was sufficient in the commitment to clearly indicate the kind of offense for which the accused was held to answer, and sufficient to indicate by reasonable inference the statute creating the offense. The court said that it satisfied the rule of convenient certainty by which such instruments are to be tested; that it pointed by reasonable inference to the statute creating the offense, and therefore, by reasonable inference, stated everything necessary to the offense which was not specifically set out. 'It was not necessary,' said the court, 'in such an instrument, to set forth the facts constituting the offense particularly. . . . It is impossible to construe the commitment as referring to any other than the statutory offense. While it does not set forth every ingredient in such offense, it contains specifications enough to indicate the general nature of the crime charged, and that is sufficient.' In *State v. Everett*, Dud. (S. C.), 295, a case often referred to by courts and text-writers, the commitment considered merely described the offense as the crime of larceny, no fact being stated essential to that offense; yet it was held, on *habeas corpus*, that the commitment was sufficiently certain to justify the officer in detaining the prisoner; that it is a great mistake to suppose that such a warrant need enumerate any fact or circumstance accompanying the offense, the nature of which is set forth therein; that it is sufficient to merely state the offense with convenient certainty; that it should not be for felony generally, but that the instrument should indicate the special nature of the felony. That decision is in harmony with the authorities generally, though directly contrary to *Ex parte Branigan, supra*, which supports counsel's views as we have before indicated. All the cases cited,

it will be found, declare for the rule of convenient certainty merely. But while the California case regards that degree, as it seems, to call for certainty to a certain intent in particular, it is obvious that convenient certainty is satisfied where language is used which, by reasonable inference, points with reasonable clearness to the particular subject intended to be expressed. The doctrine which we say generally prevails was followed in later California cases. *Ex parte Moan*, 65 Cal. 216; *Ex parte Walpole*, 85 Cal. 362. True, reference is there made to a form for commitment prescribed by statute, which is however substantially identical with the one which, it is said in sec. 4774, Stats. 1898, may be used. The California court, in the early case, while reaching a conclusion directly opposite to that declared in *Collins v. Brackett, supra*, and the cases to which we will presently refer, referred to the same authorities for support, i. e., 1 Chitty, Crim. Law, 109, and 2 Hale, P. C. 122. A careful reading of those authorities discloses the fact that what is said about the higher degree of certainty is merely advisory. When it comes to the necessities of the case the lower rule is stated with many illustrations. For example, quoting from 1 Chitty, Cr. Law, 111:

"It is necessary to set forth the particular species of crime . . . with convenient certainty. . . . If the commitment be for felony it ought not to be generally for felony, but it must contain the special nature of the felony briefly; as for felony of the death of J. S. or for burglary in breaking the house of J. S., etc. But though it was formerly thought otherwise, it appears now to be settled, that a commitment for high treason, or suspicion of treason generally, or for treasonable practices, without stating any overt act or other particulars of the crime is sufficient. And . . . there are precedents of commitment for felony in general in good authors, without stating the specific accusation. So in *Wilkes' Case*, 2 Wils. 153, 159, a commitment for publishing 'a most infamous and seditious libel entitled "The North Britons," Number 45, tending to inflame the minds and alienate the affection of the people from his Majesty, and to

excite them to traitorous insurrections against the government,' was held sufficient, though it was urged that the libel ought to have been set forth, in order that the court, on a *habeas corpus,* might be able to fix the *quantum* of bail. So it has been held that a commitment which charged the party generally with insulting justices of the peace in the execution of their office, without specifying what he said or did, is sufficient. *It is, however, in general advisable to describe the offense concisely but in substance as in an indictment."*

There is obviously a wide difference between what is advisable and what is necessary in such cases. It would be a mistake to adjudicate rights upon the basis of what is merely advisable, losing sight of the necessities of the case. We cite the following additional authorities sustaining the view expressed: *Matter of Howard,* 26 Vt. 205; *People v. Johnson,* 110 N. Y. 134; *Ex parte Willoughby,* 14 Nev. 451; *People v. Gray,* 67 How. Pr. 456; *State v. Killet,* 2 Bailey, Law, 289; *In re Kelly,* 46 Fed. Rep. 653; 4 Ency. of Pl. & Pr. 577, 578, and cases cited.

It follows from what has been said that if the general statement in the commitment, in its literal sense or by reasonable inference, points clearly to the offense intended to be charged, and such offense, so called, is one in fact, for which an accused person can properly be held, the commitment was a complete defense to the *habeas corpus* suit till overturned by some defect of a jurisdictional nature in the proceedings upon which it was based, unless it was fatally defective by reason of the statute (sec. 4774, Stats. 1898). As we have seen, the description of an offense well known to the law, by its generic name, as the offense of arson, burglary, larceny, or murder, by reasonable inference indicates the existence of all the essentials of the offense. That is just as true of a mere statutory offense when it has a name which individualizes it and points with reasonable certainty to the statute on the subject. *In re Kelly,* 46 Fed. Rep. 653; *Collins v. Brackett,* 34 Minn. 339; and *People v. Johnson,* 110

N. Y. 134, fully cover that question. Applying that rule to the commitment in question, no difficulty whatever is perceived. It says the accused was charged with having committed, on a day named, the offense of conspiring to injure. The use of the term "conspiring" suggests without possibility of doubt that two or more persons were concerned in the offense. The only law in this state making a mere agreement between two persons to do an act injurious to another under any circumstances an offense is sec. 4466a, Stats. 1898. Therefore the language "the offense of conspiring to injure," with reasonable clearness refers to such statute. It includes, by inference, a statement of all the facts necessary to satisfy the calls of the statute. The statement of the name of the crime states with convenient certainty the nature thereof and of course suggests the existence of facts necessary thereto. The general statement includes the details, if such general statement is sufficient to suggest them with reasonable clearness. A commitment so drawn as to satisfy the degree of certainty thus indicated is sufficiently precise to satisfy every part of it and is according to the prevailing rule on the subject.

The idea advanced by counsel that the commitment is fatally defective for want of the preliminary words, "against the form of the statute in that case made and provided," can hardly be considered as being seriously urged. There was a time when substance in judicial proceedings was in some respects sacrificed to mere form, or when mere form was considered to be as essential as substance; but in the progress of events the law has developed to a point so far away from such notions that they are regarded as obsolete. So long as the commitment shows that the accused was held for trial for a criminal offense, the unavoidable inference is that the act charged took place, if at all, contrary to law. Any mere formal statement of that, as a concluding phrase in the commitment, was wholly unnecessary.

This court, in *Nichols v. State*, 35 Wis. 308, characterized a useless expression, similar to the one in question, as " a mere rhetorical flourish, adding nothing to the substance of the indictment," and as wholly unnecessary in the absence of a constitutional or statutory mandate making it so. That was affirmed in *Murphy v. State*, 108 Wis. 111. There is no such mandate in the way as to the matter under consideration.

A suggestion is made by one of the learned counsel that the commitment is void because it does not follow strictly the form prescribed by statute, and another says there is no statutory commitment for such a case. The first suggestion will be considered without deciding that the officer in this case was required to use the particular form referred to. Sec. 4740, Stats. 1898, requires a warrant to contain the substance of the complaint on which it is issued, and sec. 4774 prescribes a form of commitment for trial that " *may be* used," which indicates that the offense should be stated " as in the warrant." The rule is that where a form is prescribed by statute it must be strictly followed. That has been held to mean, followed with almost technical accuracy where the language of the statute so indicates. *Keniston v. Chesley*, 52 N. H. 564. But sec. 4774 does not so indicate, unless we read " may " as " must " or " shall " and give thereto its full meaning down to immaterial details. Nothing of the kind, we think, was intended. *Streeter v. Frank*, 3 Pin. 386, did not go that far. It dealt with a material omission from a statutory form. Sec. 4774 is open to a reasonable construction, requiring only that the form be followed strictly as to the substance of things, not literally. There is a difference between following a form literally and following it strictly. The former goes to minuteness of detail in mere matters of form, while the latter may be satisfied by the essential elements. In *Streeter v. Frank* one of those elements was omitted. The words in the form under discussion, " state

the offense as in the warrant," taken in connection with the requirement that the warrant shall recite the substance of the complaint, mean no more than that it shall state the same offense as the one named in the complaint with sufficient accuracy that its identity will appear with convenient certainty. What has been said on another branch of the case as to such degree need not be repeated. The complaint charged in general language, or attempted to do so, and also by all the particulars, the commission of the offense to injure, going further in such particular than the specific offense, created or declared in sec. 4466a, though it is plain that such statute was what the complainant had in mind. The substance of the complaint was that the accused were guilty of having committed, on a day named, the offense of conspiring to injure, and that was substantially carried into the commitments.

If we were to hold that the commitments do not show with convenient certainty, within the rules above stated, that the defendants in error were imprisoned to await their trial upon a charge of having violated sec. 4466a, Stats. 1898, the circuit court none the less erred in discharging them,— if the complaint upon which they were arrested charged an offense known to the law, and the record of the examination which the court had properly brought to its attention showed that there was evidence tending to support the charge on these two essentials: first, that the offense was committed; second, that there was probable cause for believing that the accused were guilty thereof,— regardless of whether the decision of those questions, or either of them, by the committing magistrate, was right or wrong. That was substantially the rule at common law, and it was preserved by the constitutional grant of power to circuit courts to issue writs of *habeas corpus*, especially since there is no statute in any way restricting the jurisdiction of such courts in that regard. So far as the statutes of this state treat the

subject they confirm and broaden the common-law rule. Express provision is made for bringing to the notice of the court, in a *habeas corpus* suit to vindicate the right of a prisoner, detained for trial upon a criminal charge, to his personal liberty, the record of the examination including the evidence taken, and it is made his duty to examine such evidence, and, if thereby it appear to him that the accused is guilty of the offense, to commit him for trial or admit him to bail regardless of any irregularity in the original commitment. Sec. 3429, Stats. 1898; *State v. Bloom,* 17 Wis. 521. It is also the duty of the court on *habeas corpus* to examine the complaint, and discharge the prisoner if it does not state an offense known to the law; and to examine the evidence and treat the decision of the examining magistrate as outside of his jurisdiction if no competent evidence is found upon which such magistrate could properly have acted. That is well settled by the authorities. Church, Habeas Corpus, §§ 231, 236; *Matter of Wadge,* 21 Blatchf. 300; *In re Luis Oteiza y Cortes,* 136 U. S. 330; *Nishimura Ekiu v. U. S.* 142 U. S. 651; *Ex parte Bollman,* 4 Cranch, 75, 125. Whatever conflict apparently exists on this question in the books will be found on careful examination not to be a conflict in fact, but is explainable by reference to statutory regulations. We have no statutory regulations in conflict therewith, but on the contrary the statutes of this state substantially declare the common-law rule. True, at common law the writ of *habeas corpus* reached only *jurisdictional* defects; but, as the term is rightly understood, it goes further than counsel for plaintiffs in error seem to concede. Some courts use the term in the restricted sense of jurisdiction of the person and of the subject matter, while others, and those it is believed holding the correct doctrine, extend it to include excess of jurisdiction, treating a decision — other than one upon the trial of an issue — that a complaint is sufficient when it does not state any offense known to the law, or one

that the essential facts exist warranting the commitment of
a person for trial on a criminal charge, where there is no
competent evidence for the judgment of an examining mag-
istrate to reasonably act upon, as on the same basis as any
other jurisdictional defect in the proceeding.     That was
early declared as the common-law doctrine and the one to
be followed where there is no statute affecting the subject
otherwise. *Ex parte Bollman, supra.*  Chief Justice MAR-
SHALL there said, after recognizing the distinction between
imprisonment upon a final judgment and detention under
a commitment to stand trial:

"It is unimportant whether the commitment be regular
in point of form or not; for this court, having gone into an
examination of the evidence upon which the commitment
was grounded, will proceed to do that which the court below
ought to have done." Page 114.

"This having been a mere inquiry, which, without decid-
ing upon guilt, precedes the institution of a prosecution, the
question to be determined is, whether the accused shall be
discharged or held for trial. . . . 'If,' says a very learned
and accurate commentator, 'upon this inquiry it manifestly
appears that no such crime has been committed, or that the
suspicion entertained of the prisoner was wholly groundless,
in such cases only is it lawful totally to discharge him.
Otherwise he must either be committed to prison or give
bail.' " Pages 124, 125.

That declaration has always been adhered to by the fed-
eral courts and followed generally by all courts where juris-
diction in *habeas corpus* proceedings, or the practice therein,
is not otherwise regulated by statute.

There is no need to go further to demonstrate that the
common-law office of the writ of *habeas corpus*, as it came
to us and has been preserved by our state constitution, is
as indicated by the decision referred to.    While it is true
that such writ never takes the place of a writ of error, and
is confined to jurisdictional defects, when it is resorted to
merely for the purpose of liberating a person detained in
custody to await his trial on a charge of being guilty of a

criminal offense, the questions of whether there was any evidence for the magistrate to act upon and whether the complaint charges any offense known to the law are jurisdictional matters. The reviewing court, in the exercise of its function, must necessarily pass upon and reverse or affirm the decision of the committing magistrate, if such matters are properly presented for its consideration, according to its determination thereof, and in doing so it does not go beyond jurisdictional defects. It can examine the evidence only sufficiently to discover whether there was any substantial ground for the exercise of judgment by the committing magistrate. It cannot go beyond that and weigh the evidence. It can say whether the complaint will admit of a construction charging a criminal offense, or whether the evidence rendered the charge against the prisoner within reasonable probabilities. That is all. When it has discovered that there was competent evidence for the judicial mind of the examining magistrate to act upon in determining the existence of the essential facts, it has reached the limit of its jurisdiction on that point. If the examining magistrate acts without evidence, he exceeds his jurisdiction; but any act, upon evidence worthy of consideration in any aspect, is as well within his jurisdiction when he decides wrong as when he decides right.

Counsel for plaintiff in error cite to our attention a large number of cases to support their contention that the circuit court had no jurisdiction to review the evidence, many of which are cases decided by this court. We have taken time to examine each of such cases and are unable to discover that they furnish any support for counsel's position. For example, *Ex parte Jones* (C. C.), 96 Fed. Rep. 200, one of the significant cases referred to, states the rule in the syllabus, which is fully borne out by the opinion, thus:

" The sufficiency of the evidence on which an accused was committed by a magistrate is not open to review in a proceeding by *habeas corpus*, but where, although there was evi-

dence of the commission of the offense, there was no competent evidence even tending to incriminate the person charged, he should be discharged on *habeas corpus.*"

The concluding language of the opinion is as follows:

" It is true that there was evidence before the commissioner tending to show that the offense charged had been committed by some one, but a careful examination discloses no legal evidence on which the commissioner could exercise his judgment in holding the petitioner for trial. An order will be made discharging the petitioner."

The decisions of this court cited, in the main, refer to the scope of the jurisdiction of a court in reviewing the final judgment of another court upon writ of *certiorari* or *habeas corpus.* Manifestly, they do not touch the question here under discussion. Neither a writ of *certiorari* to review a final judgment of a court upon a trial, nor a writ of *habeas corpus* for that purpose, reaches the evidence. That is undoubtedly true. No common-law rule is better settled than that, while the contrary is just as well settled as regards the functions of a writ of *habeas corpus* in testing the legality of a commitment for trial for a criminal offense.

True, as counsel say, the expression has often been used by this court that upon *habeas corpus* proceedings only jurisdictional errors can be considered, and that has been used without qualification and in a way to indicate — to a person who has not in mind the distinction between jurisdiction for the trial and determination of a cause, and jurisdiction to hold a judicial inquiry to determine whether a prosecution shall be instituted — that insufficiency of evidence, no matter how great, cannot be considered, because, the court having jurisdiction of the subject matter and the person, a decision upon insufficient evidence or without any evidence is judicial or mere error, not jurisdictional error. What the court said in each one of the cases referred to was correctly said as applied to the case. The following are some of the cases: *In re Milburn*, 59 Wis. 34; *Wright v.*

*Wright,* 74 Wis. 439; *In re Graham,* 76 Wis. 366; *In re Rosenberg,* 90 Wis. 581; *In re Meggett,* 105 Wis. 291; *In re Pikulik,* 81 Wis. 158; *In re French,* 81 Wis. 597; *In re Eckart,* 85 Wis. 681. They all follow the well-known rule that where there is jurisdiction to try and determine an issue, there is jurisdiction to commit error to the extent of deciding the ultimate fact involved without competent evidence tending to support it, and that the error can only be corrected upon writ of error or appeal where one is allowed; that the writ of *habeas corpus* or writ of *certiorari* cannot reach the mischief. But a proceeding before an examining magistrate is not a judicial trial. It is a mere judicial inquiry, as before indicated, for the purpose of determining whether an offense has been committed and there is a probability that the accused is guilty thereof and should be placed on trial therefor. No plea or issue is necessary. No jury is demandable or proper. The doctrine of *res adjudicata* does not apply so that the result of one inquiry will preclude another. It is a proceeding that was unknown to the common law,— a mere statutory creation, a personal privilege which the accused must be accorded unless he waives it. Being statutory and special, evidence tending to establish the facts justifying a commitment or holding to bail for trial, is jurisdictional the same as any other statutory essential. The statute awarding the privilege provides that the examining magistrate shall act, in determining the facts, upon evidence; and that contemplates that there must be evidence, and competent evidence, tending to establish the facts. It is jurisdictional in the same sense that the production of some competent evidence before a *quasi*-judicial body, authorized by statute to act only upon evidence, is jurisdictional. The rule in such cases is that a clear violation of law in doing those things that are within the scope of the power of the officer or body to do is jurisdictional error. *State ex rel. Moreland v. Whitford,* 54 Wis. 150;

*State ex rel. Wood Co. v. Dodge Co.* 56 Wis. 79; *State ex rel. Heller v. Lawler*, 103 Wis. 460. For further authorities to support the views here expressed, see Church, Habeas Corpus, §§ 237–247; *People v. Martin*, 1 Parker, Cr. R. 187; *In re Snell*, 31 Minn. 110; *In re Hardigan*, 57 Vt. 100; *In re Simon*, 13 N. Y. Supp. 399; *State v. Hayden*, 35 Minn. 283; *People ex rel. Van Riper v. New York C. Protectory*, 106 N. Y. 604; *Ex parte Becker*, 86 Cal. 402; *Ex parte Willoughby*, 14 Nev. 451; *Jones v. Darnall*, 103 Ind. 569.

Some writers who have favored the profession with textbooks in recent years, speak of this doctrine as a departure from the common law, through a failure to distinguish between a judicial determination according to the course of the common law and a mere statutory proceeding which, though judicial, is not final in any sense, and is not an action, but a proceeding preliminary to an action. The misconception referred to is very marked in the work of an able writer who cites *State ex rel. Dunn v. Noyes*, 87 Wis. 340, to support a suggestion that this court has not departed from the general rule as to the review of judgments on *habeas corpus* in the treatment of the scope of the writ as regards reaching behind the determination of an examining magistrate. That case did not deal with anything but the general rule, that only jurisdictional defects can be reviewed on *habeas corpus*, and the one that a *de facto* judicial officer or body has the same jurisdiction as any other as regards collateral attack. The case is in harmony with the idea that some evidence is necessary to preclude successful collateral attack upon an examining magistrate's conclusion because that is a statutory requisite thereto.

Independently of the common-law rule it has been repeatedly held, in states having statutes similar to ours, that they contemplate the examination of the proceedings before the committing magistrate, where properly brought to the attention of the court on *habeas corpus* proceedings, so far

as necessary to determine whether the magistrate acted upon competent evidence tending to establish the facts; and also the introduction of new evidence on issue joined as provided. *People ex rel. Van Riper v. N. Y. C. Protectory,* 106 N. Y. 604; *People v. Richardson,* 18 How. Pr. 92; *Matter of Henry,* 13 Misc. (N. Y.), 734; *People v. Tompkins,* 1 Parker, Cr. R. 224. In the report of *People v. Martin,* 1 Parker, Cr. R. 187, there is a full review of American and English authorities, and as a result it is said, reading from the syllabus:

"In criminal cases where an indictment has been found, the court, upon *habeas corpus,* cannot go behind the indictment because there are no means of ascertaining upon what it was found. But on a commitment before indictment the whole question of guilt or innocence is open for examination on the return to the writ of *habeas corpus,* and the inquiry is not necessarily confined to an examination of the original depositions. In such cases, under our Revised Statutes, the proceedings on *habeas corpus* are in the nature of an appeal from the decision of the committing magistrate."

It is not to be understood by that language that the court held that, on such appeal, so called, the court could go further in reviewing the decision of the committing magistrate on the evidence on which he acted than to determine whether it furnished some reasonable ground for a decision. Church, in his work on Habeas Corpus, expresses the view that such statutes as those in New York and in this state are mere declarations of the common law. He is borne out by the holdings of the New York court, but we need not discuss that subject here. It is quite clear, though, that ch. 147, Stats. 1898, was intended to cover the entire field of practice in *habeas corpus* suits so far as relates to original proceedings. The scope of sec. 3425 is broad enough, if a statute was required on that question, to enable the petitioner for writ of *habeas corpus,* by his petition, to bring to

the attention of the court all the proceedings before the committing magistrate or by presenting the same as evidence in support of his answer to the return, where such answer contains allegations rendering such proof competent. Sec. 3427 precludes examination into the proceedings upon which the determination of the court was had in committing the person, only when such detention is upon a final judgment or order. That manifestly does not include a determination of a mere judicial inquiry. Sec. 3429 refers to the former section and contemplates the examination of evidence produced before the examining magistrate where it is properly brought to the attention of the court.

Sufficient has been said to demonstrate that counsel for plaintiff in error have confused the scope of a *habeas corpus* suit calling in question the validity of a final judgment or order and the scope thereof as to reaching the proceedings of a committing magistrate. It is not understood, it seems, that failure to comply with the statute requiring such magistrate, in his inquiry, to act upon evidence, is not an error committed in acting within this jurisdiction, as is the act of entering a judgment, by a court, upon the trial of an issue, without competent evidence to warrant it,— but is error in going beyond his jurisdiction. The general rule invoked by counsel is as claimed, but the application of it contended for is wrong.

The point made by counsel for plaintiff in error that the circuit court erred in going beyond the warrant of commitment and examining the complaint, and that it would have been error to have taken into consideration the evidence given before the committing magistrate, which was properly produced as part of the *habeas corpus* proceedings, cannot be sustained. The position of counsel for defendants in error, that the question of whether the complaint states any crime known to the law, and that of whether there was any evidence tending to show the facts essential to the de-

tention of the accused for trial upon the charge, were open, is approved.

The doctrine is invoked by the learned counsel for defendant in error *Melvin A. Hoyt*, that "where concert of action is necessary to the offense, conspiracy does not lie." That principle is familiar, but its application, as its language clearly indicates, is necessarily confined within very narrow limits. It does not reach a situation where mere combination to effect an object is itself criminal and not merged in a crime of higher degree, else the absurd result would follow that the offense of conspiracy would be impossible either at common law or under the statute. The rule applies where the immediate effect of the consummation of the act in view, which is the gist of the offense, reaches only the participants therein, and is in such close connection with a major wrong as to be inseparable from it, as for instance, in the offense of adultery, or bigamy, or incest, or dueling. That illustration, in a different way, is given at § 1339, Whart. Cr. Law, which is cited to our attention and relied upon by counsel, but which, as it seems, is wholly misunderstood in urging it upon the attention of the court as applicable to the facts of this case. Where an act is of itself an offense, as that of adultery, it cannot be made a different offense because of the circumstance that in the conception of it a precedent agreement by two persons is necessary; but if the act is preceded by an agreement between several persons to cause the offense to be committed by others, or between a member of the combination and a person outside of it, the gist of the precedent concurrence is the wrongful agreement; that of the object thereof is the adulterous act. In the latter there is the element of *concursus necessarius*,— the concurrence in the ultimate act constituting the crime, precluding its being prosecuted as the crime of conspiracy. In the former there is also the element of *concursus necessarius* in that at least two persons

are necessary to a combination or agreement. But there is also the element of *concursus facultativus*, making it a distinct offense. Those concerting to cause the crime to be committed may be prosecuted for the offense of conspiracy, and those guilty of the act the combination was formed to bring about may be prosecuted for that, though the effect thereof be to prosecute one of the parties for both offenses. In the latter the plurality of agents, really, as Mr. Wharton says, in effect, is in aid of the conception to commit the ultimate act of adultery. In the former the plurality of agents is as necessary to the full conception of the offense so as to preclude the possibility of failure thereof, as to the consummation of the offense itself. In the one, concert is essential to the act and a necessary part of it; in the other, concert, itself an offense, is a mere aid to the act which is the ultimate purpose thereof,— a purpose that is susceptible of being abetted without, though not as effectually as with, the specific, independent act of combination. It is only where the concurrence to commit an offense and the consummated act are so connected that they really constitute one act, every element inculpatory of each party, so that separation of the whole into its constituent elements and a prosecution for each as a distinct offense would place the parties twice in jeopardy, that the rule applies.

*Shannon v. Comm.* 14 Pa. St. 226, and *Miles v. State*, 58 Ala. 390, cited by counsel to sustain his view, are in harmony with what has been said. In the first case cited the rule is stated thus: "Where concert is part of a criminal act, it is not a subject of indictment as a conspiracy to commit the act." That is, as applied to this case, if the mere infliction of an injury to The Journal Company in its business was a criminal act, and obviously it was not such, the infliction thereof by two persons acting in concert and by mental concurrence could not be prosecuted as a conspiracy. But, as said in *Shannon v. Comm.*, where an act is an inte-

gral offense and not an integrant part of one, a guilty participant may be prosecuted for both. The term "act" as there used manifestly refers to an act which is illegal in the sense that it is wrong, tested by the rules of good morals. In this case the sole offense, if any is charged, is the combination of several persons wilfully and maliciously to injure The Journal Company in its business. There is no room whatever for saying that the prosecution for that offense would result in the separation of it from another and greater offense, as in the case where persons guilty of the crime of adultery were attempted to be prosecuted for a conspiracy to commit that offense. The fact that it would not be practicable or even possible in such a situation for one person alone to commit the act, i. e., of injuring the business of The Journal Company, which is the alleged object of the combination, does not militate against the prosecution of all the parties to the combination as guilty of the crime of conspiring to wilfully and maliciously injure The Journal Company in its business. Counsel admits that there is a dearth of authority to support the application contended for, of the principle under discussion. He failed to cite to the attention of this court any that meet the situation when fairly analyzed, while the explanation of the rule we have given, showing that it has no application to the prosecution under discussion, is supported by ample authority, as it is by reason and common sense. We cite the following: *U. S. v. Stevens,* 44 Fed. Rep. 132; *U. S. v. Boyden,* 1 Lowell, 266; *Reg. v. Boulton,* 12 Cox, Cr. Cas. 87; *U. S. v. Rindskopf,* 6 Biss. 259; *U. S. v. Bayer,* 4 Dill. 407; *State v. Sprague,* 4 R. I. 257; *Ochs v. People,* 124 Ill. 399, 426; *Reg. v. Whitchurch,* 24 Q. B. Div. 420; *U. S. v. Martin,* 4 Cliff. 156; *Reg. v. Rowlands,* 5 Cox, Cr. Cas. 466. In *Reg. v. Whitchurch,* a woman conspired with others to administer drugs to herself or by some other means to cause her to abort a child with which she was pregnant, and it was held that all the parties concerned

in the combination could be prosecuted for the offense of conspiracy. Lord COLERIDGE, C. J., in delivering the opinion of the court, said: "I cannot entertain the slightest doubt that if three persons combine to commit a felony they are all guilty of conspiracy, although the person on whom the offense was intended to be committed could not, if she stood alone, be guilty of the offense." In *U. S. v. Bayer* the facts were these: Under the statutes of the United States on the subject of bankruptcy there was an offense that could be committed only by the bankrupt. Such person and others colluded together to facilitate the commission of the offense by him. All were prosecuted for the offense of conspiracy and the prosecution was sustained. DILLON, J., in delivering the opinion of the court, said, in the main, 'Conspiracy to commit a crime is of itself criminal at common law. The fact that one of the conspirators could not himself commit the intended offense neither relieves him of guilt nor disables him from co-operating with another person who is able to commit it.' In that situation the conspiracy and the consummated act are different offenses, in the sense at least that the fact that the offense has been committed is no legal bar to a prosecution for the conspiracy. In *Ochs v. People, supra,* it was said that it is not essential to a conspiracy that the object thereof be possible. We will not further discuss this question. It is not improbable that more has been already said than is warranted in its proper solution. We confess that when it was first suggested on the oral argument it hardly seemed to be worthy of serious attention or that the learned counsel so supposed. But an examination of the full discussion of the subject in counsel's brief satisfies us we were at least in error as to the state of his mind, and we have treated it accordingly and put all the labor upon it which the gravity thereof would call for if there were a reasonable doubt, before a study of the subject, as to whether the case might turn upon its solution.

We have now considered, we believe, all the important contentions and suggestions advanced by counsel for the respective parties, which from any point of view could stand in the way of an examination of the complaint and the evidence, assuming, without intending to decide, as yet, that sec. 4466a, Stats. 1898, is a valid provision of law. It has been seen that the commitment, on its face, justified the sheriff in holding the defendants in error to await their trial for a violation of such section, and that it was competent for the circuit court, in the *habeas corpus* suit, the proceedings before the examining magistrate having been duly presented for consideration, to go behind the commitment and determine whether the complaint, by any reasonable construction, stated an offense within the meaning of such statute, and whether there was any evidence tending to establish the two essentials for holding the accused for trial, i. e., that the offense charged had been committed and that there was probable cause to believe the accused guilty thereof. Sufficient has also been said to show that the general language of the complaint, standing alone, to the effect that the accused did, on a day and at a place named,— which satisfied the requisites of the statute to that extent,— concert together with intent maliciously to injure The Journal Company and the other persons named, in their trade and business, sufficiently charged the doing of those acts made an offense by the statute. That such general language substantially follows sec. 4466a, and that such section is the only statute making a conspiracy without an overt act a criminal offense, is not questioned. It follows that the complaint must be construed with reference to such statute, and be held to satisfy it unless the general language thereof is connected with allegations which take therefrom some essential element.

At this point we meet the claim of counsel for defendants in error that the statement of the particulars of the alleged

The State ex rel. Durner vs. Huegin.

wrongful agreement, and of the acts done pursuant thereto, explains the meaning of the general charge and in that way renders the complaint insufficient.   To that, answer is made by counsel for plaintiff in error that the allegations as to acts done pursuant to the conspiracy were unnecessary, the offense being complete as soon as the agreement was made to commit the malicious injury, therefore that such allegations should be rejected as surplusage.   That is undoubtedly a correct rule, but no reason is perceived why the statement of the particulars of the agreement can be rejected.   It is plain that, while the complaint states generally an agreement to maliciously injure the persons named in their trade and business, in the terms of the statute, and then states that the members of the unlawful combination, pursuant to their unlawful purpose, agreed to do certain specific acts mentioned, the real purpose of the complainant was to state but one offense,— not an unlawful conspiracy to injure, generally, the persons named in their business and also an unlawful conspiracy to injure them in such business in a particular way.   The facts were stated first according to their legal effect and second in detail.   That is the only reasonable construction of the complaint.   It should be read as if the language were to the effect that the accused maliciously conspired together to maliciously injure the persons named in their business, in that they agreed and concerted together, in manner and form as stated in the statute, to maliciously injure such persons by doing the particular things alleged. That was the conclusion reached by the circuit judge.   He disposed of the case at that point on a supposed insufficiency of the complaint.   If he had gone further and examined the evidence the result would not have been different; for that only tended to establish the truth of the complaint.   Viewed in the light of the particular allegations as to the nature of the combination, the evidence, for that purpose, was ample to give the examining magistrate jurisdiction to pass upon

the truth of such allegations to the extent necessary to hold the accused to trial.

At this time it seems necessary to restate the charge contained in the complaint as we have construed it.   Upon that turn the remaining questions to be considered.

According to the complaint it was in substance agreed between the defendants in error *Melvin A. Hoyt*, representing The Daily News, *Albert Huegin*, representing The Milwaukee Sentinel, and *Andrew J. Aikens*, representing The Evening Wisconsin,— each controlling the columns of the paper with which he was connected, each paper being a daily newspaper published in the city of Milwaukee and a medium for advertising business in the same field occupied by The Journal Company, the publisher of a newspaper called The Milwaukee Journal, also a medium for advertising business,— that whereas the latter had raised its rates twenty-five per cent. above those customarily charged for such service by it and the proprietors of the other papers named, if any person agreed to pay or paid The Journal Company its increased rates for advertising in its paper, he should not have the privilege of advertising in any of the other newspapers unless he should advertise in all of them at such increased rates; but that any person who should decline to pay The Journal Company said increased rates for advertising in its paper, should have the privilege of advertising in any or all of the other papers at the old rate.   Now, it is said there is nothing in that from which a reasonable inference of the malicious purpose called for by the statute can arise; that such intent means bad intent to injure another in the sense of committing an actionable injury, while the terms of the agreement indicate only a purpose on the part of those concerned in it to promote their own interests regardless of those of their competitor.   The malice of the statute is evidently malice in law, not necessarily ill-will or malice in fact.   It means, as is commonly said, a wrongful act done intention-

ally without just cause or excuse. The statute does not deal with things corporeal, as the person or property of another, but with his reputation, trade, business, or profession. If we can see in the agreement, by reasonable inference, the independent purpose to harm The Journal Company in its business of furnishing to the trade facilities for advertising, that is sufficient as regards the element of malice. There seems to be no difficulty about that. The principle that every one is presumed to intend the natural and probable consequences of his voluntary acts suggests at once, upon looking at the agreement, that the primary, if not sole, end in view was to force The Journal Company to reduce its advertising rates to the old standard or cause it to lose custom, either of which alternatives would result in pecuniary loss to it and one of them in the destruction of the freedom of action every one is entitled to enjoy in the conduct of his business, without turning any pecuniary or other legitimate gain to its competitors. If the agreement contemplated that any legitimate benefit, under any circumstances, would flow to the participants therein or the concerns they represented, by compelling The Journal Company to reduce its rates for advertising, the ground for it is not disclosed by the transaction as stated, and it is one of those mysteries of a special calling that persons outside thereof cannot comprehend. How could any material benefit have been expected by any member of the combine, from causing a customer or customers of The Journal Company to leave it rather than be denied the use of any other efficient newspaper medium for advertising in the field occupied by the four competitors? No one has seemed to seriously attempt to answer that for defendants in error. Any benefit that could be suggested would be so remote and trifling as not to appeal to our reason as the purpose of forming such an elaborate and far-reaching scheme. In only one view that we can even imagine can it be said that substantial contemplated benefits to the mem-

bers of the combine could have been expected, and that is this: Assuming that the reasonable necessities of business required at least two newspaper mediums for advertising in the particular field in question, the advantages of The Journal Company's paper were so great that rather than forego the use thereof, it was supposed that advertisers, in considerable numbers, would pay the severe penalty prescribed by the agreement. But that, so far as anything goes which appears in the complaint or the evidence, has little or nothing to rest upon. So, instead of looking into the agreement in vain for anything reasonably suggesting an intent to harm The Journal Company in its business, we have great difficulty in discovering any other intent, and are not able to solve that difficulty without resorting to conjecture.

It follows that we reach the conclusion that the complaint admits of a construction which will satisfy the statute, and also that there was some proof that the defendants in error made the agreement to maliciously injure The Journal Company in its business as charged. We are next to consider whether it was such an injury as satisfies the calls of the statute. Counsel for defendants in error say it was not; that it was only an ordinary agreement between independent persons in their own business, to maintain prices at a particular level for the promotion of their legitimate interests; that such a combination is not illegal in the sense of being actionable at common law; that the statute does not change that, or, if it does, that it is unconstitutional.

We have already proceeded beyond some elements of the above somewhat compound proposition, but those parts to which we have already adverted were so exhaustively gone over by the able counsel who argued the case, both in the main argument and on the reargument thereafter accorded for that special purpose, that we will give some further attention in this connection to what has already been referred to incidentally.

Assuming, for the moment, that the agreement is of the nature contended for, as indicated, and that the statute is aimed at such, it does not follow, in our judgment, that entering into it was not a criminal offense. That one person, acting by himself, or many in combination, may, in the legitimate pursuit of their own business, injure the business of a rival even to the extent of impoverishing him and driving him out of the field of industry occupied in common, leaving him remediless for his misfortune in the absence of a statute to the contrary, must be admitted. National and state legislatures have dealt with that subject in many instances, in recent years, and uniformly with success so far as regards constitutional limitations,— with such success in fact that the man of learning must be recognized as one of courage who will attempt at this late day to challenge legislative power in that regard on constitutional grounds. The time seems past for that, as regards combinations of individual independent interests, designed to remain independent for most purposes, but to act in combination to control trade. By numerous decisions of the highest courts in this country, the police power incident to sovereignty has been held to be broad enough to permit the legislature to deal, by creating civil or criminal liability, or both, with all combinations in restraint of trade which are void by common-law rules on grounds of public policy, and, within reasonable limits to be set by courts in the light of constitutional safeguards, to say that things are contrary to public policy not so before, to legislate against them, and to enforce the legislative will by civil or criminal liability, or both:— within the broad field indicated, to regulate or prohibit any combination of the kind we are talking about, formed for the purpose of restraining trade or disturbing those natural business conditions, where every individual is supposed to be free to contend with every other in the regular course of business. We are speaking here of independent interests

concerting together for the purpose mentioned. That must be kept in mind. These questions have been so firmly settled that no court will now venture to do more than follow what has been decided. Contracts that operate merely in restraint of trade, such as it is contended the one in question was, even though unreasonable, were not actionable at all at the common law. They were void, merely. The courts would not enforce or give effect to them. But new conditions have arisen creating new dangers, or intensifying old ones that were once considered so trifling as to pass unnoticed, calling for new restraints and new remedies. Who can say that sovereign power has been so surrendered as to be left incapable of dealing with that subject. Right or wrong, those dangers have been considered so great, and power to deal with them so ample, that legislation has gone to the length we have indicated, making combinations to stifle independent, individual competition, illegal and actionable, civilly and criminally, all upon the broad ground that legislative authority exists in the administration of the police power, to regulate or prohibit those things which are contrary to public policy by the rules of the common law; and to go further and determine, in the light of new conditions, what is detrimental to the public welfare, and to legislate accordingly.

On what has been said, the following of many authorities that might be cited are in point: *U. S. v. Addyston P. & S. Co.* 85 Fed. Rep. 271; *U. S. v. Trans-Missouri F. Asso.* 166 U. S. 290; *Gibbs v. McNeeley,* 102 Fed. Rep. 594; *Nester v. Continental B. Co.* 161 Pa. St. 473; *People v. Sheldon,* 139 N. Y. 251; *Jackson v. Stanfield,* 137 Ind. 592; *People ex rel. Morse v. Nussbaum,* 32 Misc. (N. Y.), 1; *Leonard v. Poole,* 114 N. Y. 371; *People v. Milk Exchange,* 145 N. Y. 267; *Ford v. Chicago M. S. Asso.* 155 Ill. 166. The number of cases that could be cited on this subject is so great that no attempt has been made to do more than collect here a few

that contain pretty full discussions thereof. A study of them reveals the fact that the power of public opinion in favor of preventing combinations to stifle individual freedom in business and the sacrifice of those benefits that are popularly supposed to flow from free competition, has led to legislation in most of the states of the Union, as well as by the federal Congress, and that in but very few instances has such an enactment met the bar of the constitution of state or nation. A late work that treats of police powers, sums up the subject here under discussion thus:

"It is believed that the constitutionality of none of the numerous anti-trust statutes has been successfully questioned on the ground that they infringed the personal liberty of contract, in punishing civilly or criminally the entrance into a contract or combination in unreasonable restraint of trade. That such contracts and agreements are void, independently of statute and at the common law,— so far, at least, as to justify the courts in refusing to enforce them or in any other way to give the parties to them the aid of judicial process in protecting and enforcing the rights of parties, which grow out of such agreements,— has been too long the settled rule of law, to admit of any serious question now. And the power of the state to declare such contracts unlawful being conceded, it is completely within the discretion of the legislature to determine whether such unlawful contracts and combinations shall be simply ignored by the courts or the parties to them be subjected to criminal or civil liabilities." 1 Tiedeman, State & Federal Control, § 112.

Coming back to the question of whether the malicious injury which the complaint charges against the defendants in error is such an injury as the one named in the statute, it seems that it makes little difference whether we view the statute as merely declaratory of the common law or as in the line of the numerous state statutes to which we have referred, condemning combinations in restraint of, or injurious to, trade. It has the distinctive element of malice which satisfies common-law requirements of a malicious combination to injure, which is actionable for civil damages and

punishable as a criminal offense by common-law rules, as we shall see later. Much confusion is created in cases of this kind by using expressions of courts made on one state of facts or as regards one form of action, to support a conclusion in a case involving a different principle. A large number of cases are cited to our attention where it is said that, if an act committed by one is not actionable, it is not where committed by many acting in concert. The fallacy of that, as applied to conspiracy in its criminal aspect, where there is the distinct and substantive wrong of intent to injure, was sufficiently treated by this court in *Martens v. Reilly*, 109 Wis. 464. Counsel for defendants in error, however, insist upon that doctrine in this case, citing many civil cases where it has some application, damages being the gist of the action, among which are three late English cases that deserve careful consideration. If the doctrine of those cases, as settled in the last of them, is to prevail, we must all revise our notions of the law of conspiracy, and the books must be rewritten. The following are the cases referred to: *Mogul S. S. Co. v. McGregor*, 23 Q. B. Div. 598, *S. C.* decided in House of Lords and reported in [1892] App. Cas. 25; and *Huttley v. Simmons*, [1898] 1 Q. B. Div. 181. The first case involved a combination to monopolize trade at the expense of plaintiff, but no element of malice was found. The action was to recover damages. In that situation it was true that the defendants were not liable in combination if one of them would not have been had he acted alone. The interesting feature of that case is absence of malice. When first decided all the learned judges who wrote upon the question reached the conclusion on which the judgment of the court was entered, upon the theory that no specific intent on the part of the defendants to injure the plaintiff wrongfully, no malice, was disclosed by the testimony. Bowen, L. J., said: "Certain kinds of conduct not criminal in any one individual may become criminal if done by combination among

several." "A combination may make oppressive or dangerous that which, if it proceeded only from a single person, would be otherwise, and the very fact of the combination may show that the object is simply to do harm, and not to exercise one's own just rights." FAY, L. J., said: "I lay out of consideration in this case competition used as a mere engine of malice, even where I do not in terms repeat the exception." Lord HANNEN said: "I known of no restriction imposed by law on competition by one trader with another, with the sole object of benefiting himself. I consider that a different case would have arisen if the evidence had shown that the object of the defendants was a malicious one, namely, to injure plaintiffs, whether they, the defendants, should be benefited or not." The *Mogul S. S. Co. Case*, as appears from the opinions rendered in both courts, is full of expressions showing that it was not supposed then that an act, not actionable if perpetrated by one, could not be made so when perpetrated by several in combination, or that liberty to form business combinations to promote the business of the members thereof in the free course of trade, applied to combinations of traders in the same calling to maliciously injure a rival. The free course of trade that one, or a number in combination, may legitimately enjoy, does not include the right to maliciously injure another in his free course of trade. Such is the decision in the *Mogul S. S. Co. Case* on its face. We should say, that must have been the view of the learned men who pronounced the opinions in that case, if it were not for what followed in the subsequent case, because it is in harmony with many decisions cited and approved in the opinions, a good instance being *Gregory v. Duke of Brunswick*, 6 Man. & G. 205, where it was held that preconcerted hissing of an actor for the purpose of injuring him in his profession, was actionable. That and many other cases decided on the same principle were approved. If we say that such principle had prevailed in the English

courts for two centuries prior to the *Mogul S. S. Co. Case*, we are supported by the lord chancellor in *Allen v. Flood*, [1898] App. Cas. 1. There the element of conspiracy was absent, but the element of malice was present. The majority of the court there, contrary to what was said, inferentially at least, and what all of the judges were so careful to say as to indicate that it was the turning point in their minds in the *Mogul S. S. Co. Case*, decided that malice in and of itself could not render that a ground for civil liability which without it would be lawful. The reasoning to support that and the decision, at least as applied to a conspiracy with malice, is out of harmony with right and justice, and out of harmony with a multitude of cases that had been theretofore decided by English courts, and the teachings of those who had built and filled the storehouses of learning from which all draw, outside of legal opinions. How can it be harmonized with *Gregory v. Brunswick*, where the conspirators were held liable because of their malicious purpose; and *Clifford v. Brandon*, 2 Camp. 358, a similar case; or *Garret v. Taylor*, Cro. Jac. 567, where malicious impeding of workmen was held actionable,— the authority of which, up to *Allen v. Flood*, had never been questioned. Those simple cases contain all the principles which govern this case, on the particular question under discussion.

The decision in *Allen v. Flood* was not reached by any great weight in number. Lord WATSON, who delivered the main opinion in favor of it, confessed that the rule established was new in English law. The lord chancellor labored with great vigor to stem the tide of what he considered would amount to a judicial destruction of a system of law, on an important subject, which was as old as the common law. He said that the decision overruled the views of the most distinguished judges of England who had spoken on the subject for 200 years; that it was a departure from the principle that had theretofore guided the courts in the pres-

ervation of individual liberty. He cited numerous expressions of the character of those which we have quoted from the opinions of the judges in the *Mogul S. S. Co. Case*, and said that, "if the elements, which each noble lord in turn pointed out did not exist in that case, had in fact existed, the decision would have been the other way." Lord MORRIS said that the decision overturned "the overwhelming judicial opinion of England." In that situation one can discover very little in the case to warrant adopting it and extending the principle thereof to a combination to maliciously injure.

After *Allen v. Flood*, [1898] App. Cas. 1, it was but a step to reach *Huttley v. Simmons*, [1898] 1 Q. B. Div. 181. The conclusion there was in harmony with what Lord HALSBURY evidently anticipated would be the final outcome of the rule he so vigorously dissented from. The court held, combining the doctrine of the *Mogul S. S. Co. Case* and that of *Allen v. Flood*, that a conspiracy with malice, to do an act, gives a right of action only when the act agreed upon to be done and in fact done, would have been, without preconcert, actionable as a civil injury; because an act lawful without malice is not made unlawful by the addition of the element of malice.

While it is true that the doctrine of the cases referred to, even up to the final conclusion in *Huttley v. Simmons*, has to some extent influenced the judicial policy of this country, it is safe to say that the teachings thereof have not, up to this time, been adopted here in any material degree. In courts where it has been partially adopted there have often been most vigorous dissents, as, for example, *Passaic P. Works v. Ely & Walker D. G. Co.* 105 Fed. Rep. 163. Mr. Eddy, in his work on Combinations, published the present year, after a very careful review of all of those cases, said, speaking of *Huttley v. Simmons*:

"If this decision be sound, there is little indeed to the law of civil conspiracy. The conclusion reached is logically

correct if the premises be admitted. If the proposition is sound that a conspiracy to do certain acts gives a right of action only where the acts agreed to be done, and in fact done, would have involved a civil injury to the plaintiff regardless of any confederation, then the combination is entirely immaterial, and the entire law of civil conspiracy is a superfluous discussion. . . . But, notwithstanding the decision in *Huttley v. Simmons,* we believe the law for England, and certainly for the United States, to be well settled to the effect that parties to a conspiracy may be liable for damages occasioned by acts which, if done by individuals severally, would not give rise to a cause of action." Sec. 503.

In order to well understand that characterization, one must know that, after a review of numerous cases, the author deduced the conclusion that the element of malice, the intent to injure on the part of several acting in combination, will make that actionable that would not otherwise be so.

This court has often held that an executed conspiracy to inflict a malicious injury is actionable. To hold otherwise now and follow *Huttley v. Simmons,* would be to overrule those cases. *Bratt v. Swift,* 99 Wis. 579; *Milwaukee M. & B. Asso. v. Niezerowski,* 95 Wis. 129; *Gatzow v. Buening,* 106 Wis. 1. The great weight of authority, almost all authority, is to the same effect. We give a few citations. 1 Hawk. P. C. 446, § 2; *State v. Stewart,* 59 Vt. 273; *Carew v. Rutherford,* 106 Mass. 14; *Ertz v. Produce Exchange,* 79 Minn. 140; *State v. Buchanan,* 5 Har. & J. 317; *Comm. v. Waterman,* 122 Mass. 57; *Farmers' L. & T. Co. v. N. P. R. Co.* 60 Fed. Rep. 803; *State v. Norton,* 23 N. J. Law, 33; *State v. Glidden,* 55 Conn. 46; *Sherry v. Perkins,* 147 Mass. 212; *Smith v. People,* 25 Ill. 17; *Crump v. Comm.* 84 Va. 927; *Doremus v. Hennessy,* 176 Ill. 608.

In the last case above cited, PHILLIPS, J., speaking for the court, summed up the subject under discussion thus:

"Lawful competition that may injure the business of another, even though successfully directed to driving that other out of business, is not actionable. Nor would competition

of one set of men against another set, carried on for the purpose of gain, even to the extent of intending to drive from business that other set and actually accomplishing that result, be actionable unless there was actual malice. 'Malice,' as here used, does not merely mean an intent to harm, but means an intent to do a wrongful harm and injury. An intent to do a wrongful harm and injury is unlawful, and if a wrongful act is done to the detriment of the right of another, it is malicious; and an act maliciously done, with the intent and purpose of injuring another, is not lawful competition."

That expresses the common-law doctrine and the one that prevails here. How contrary it is to *Huttley v. Simmons*, [1898] 1 Q. B. Div. 181, appears without a suggestion.

The late English doctrine seems not to be one of those changes which come from mere development; it is a revolution. The pressure of desire for freedom to combine to monopolize trade and render combinations successful by the malicious destruction of the business of competitors is not liable to find favor with the courts in this country, especially at a time when public opinion to the contrary is so strong that much of the time of legislatures is occupied in inventing new methods of preventing combinations which are perfectly lawful by rules of the common law. The ideas pressed upon the attention of the court in this case have been pressed upon every court in the land where opportunity therefor has been presented since the decision in the *Mogul S. S. Co. Case*. So far as then developed they were presented in *Farmers' L. & T. Co. v. N. P. R. Co.* 60 Fed. Rep. 803, and rejected, the learned circuit judge who wrote the opinion quoting with approval from *Comm. ex rel. Chew v. Carlisle*, Brightly, N. P. 36, the following:

"It will therefore be perceived that the motive for combining, or, what is the same thing, the nature of the object to be attained as a consequence of the lawful act, is, in this class of cases, the discriminating circumstance. Where the act is lawful for an individual, it can be the subject of a con-

The State ex rel. Durner vs. Huegin.

spiracy when done in concert only where there is a direct intention that injury shall result from it, or where the object is to benefit the conspirators to the prejudice of the public or the oppression of individuals, and where such prejudice or oppression is the natural and necessary consequence."

. Frequent recurrence to the fundamental principles of actionable conspiracy is essential to keep from ingrafting upon a judicial system something which is entirely new, to meet the desires of those who arrogate to themselves the right, not only to monopolize trade or effort in some particular field, but, under the guise of fair trade, to control or destroy the business of competitors without any expectation of profit to themselves,— to wrongfully harm such competitors merely because they insist upon individual right to conduct individual business in one's own way. A combination with the malicious purpose indicated is an actionable wrong. Had it not been for sec. 4568, Stats. 1898, adding to the common-law essentials of an indictable conspiracy the necessity for an overt act, sec. 4466a would have been unnecessary to enable the court to punish, criminally, such wrongs. That is a mere declaration of the common law. It operates as a repeal, by implication, of sec. 4568 so far as otherwise a specific overt act would be required to render a malicious conspiracy to injure the trade, business, reputation, or profession of another, an offense. The old doctrine, with its ancient meaning, should be referred to in construing sec. 4466a. An actionable conspiracy is a combination of two or more persons for the purpose of accomplishing a criminal or unlawful object by criminal or unlawful means, or a lawful object by criminal or unlawful means. One may, through purely malicious motives, attract to himself another's customers and the injury be so slight in contemplation of law that *De minimis non curat lex* applies; but when he unites others with him to maliciously injure the business of another for the mere grat-

ification, in whole or in part, of a desire to inflict such injury, the condition of there being the combined force of many directed towards another, characterized by the element of malice, renders the act of combining for the particular purpose unlawful and a substantive offense, in the absence of a statute requiring some additional element. As said, in effect, in *Farmers' L. & T. Co. v. N. P. R. Co.* 60 Fed. Rep. 803, the union of individual forces by agreement, to accomplish the injury, gives to such agreement the character of a purpose to reach the end in view by violence, and the accomplishment thereof the character of a purpose effected by violence. The law never has and probably never will leave an individual, or class of individuals, remediless against such a wrong.

This opinion has been carried to great length. The justification therefor, if there is any, lies in the importance of the case and the numerous questions presented for decision. All of such questions, as regards the character of the wrong complained of, from the standpoint of counsel for defendants in error, have their best support in the three English cases to which we have particularly referred. A full discussion of them, as it seems, leaves little more that need be said. As indicated at the commencement, a long opinion was unavoidable if reference was to be made even briefly to the many points presented in the voluminous briefs of counsel. As it is, there are some to which we have referred only briefly, though it is believed that all have been covered in principle. Our conclusion is this: the term "malicious injury," as used in the statute, is synonymous with that term at the common law; it refers to the infliction of a wrongful injury intentionally; such a wrong is actionable even though the same purpose, if formed and executed by an individual, would not, in contemplation of law, be considered sufficiently serious to call successfully for legal redress. There is nothing in this militating at all against the right of individuals to

combine and associate together for the purpose of promoting their individual welfare in any legitimate way. It strikes only at the assertion of a right of combining to resort to the use, as a single power, of the individual abilities and resources of two or more to wrongfully accomplish harm to another in the line of those things mentioned in the statute. It is in harmony with the doctrine, so definitely stated by Baron BRAMMEL in *Reg. v. Druitt*, 10 Cox, Cr. Cas. 593, that it has often been quoted by courts and text-writers and nowhere rejected: "The liberty of a man's mind and will to say how he shall bestow himself and his means, his talents and his industry, is as much a subject of the law's protection as that of his body;" and "if any set of men agree among themselves to coerce that liberty of mind and thought by compulsion and restraint, they are guilty of a criminal offense."

*By the Court.*— The orders of the circuit court discharging the defendants in error are severally reversed, and the cause is remanded with directions to remand them to the sheriff of Milwaukee county.

DODGE, J., took no part.